No. 12618

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

STATE OF MONTANA ex rel, WILL J.
KRUTZFELDT, COUNTY ATTORNEY OF
CUSTER COUNTY, MONTANA AND JAMES J.
SINCLAIR, his Special Assistant,

Relators,

-vs-

THE DISTRICT COURT OF THE THIRTEENTH JUDICIAL
DISTRICT, IN AND FOR THE COUNTY OF YELLOWSTONE,
on Change of Venue from District Court of the
Sixteenth Judicial District of the State of
Montana, In and For the County of Custer, The
Honorable M. James Sorte, Presiding, thereof,

Respondents.

ORIGINAL PROCEEDING:

Counsel of Record:

For Relators:

James J. Sinclair, Special Assistant County Attorney,
argued, Billings, Montana
Will J. Krutzfeldt appeared, County Attorney, Miles
City, Montana

For Respondents:

Joseph P. Hennessey argued, Billings, Montana
Kenneth Wilson appeared, Miles City, Montana

Amicus Curiae

Hon. Robert L. Woodahl, Attorney General, Helena, Montana
J. C. Weingartner, Assistant Attorney General, appeared,
Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Diane Barz, Deputy County Attorney, argued, Billings,
Montana

Submitted: October 24, 1973

Decided: NOV 12 1973

Filed: NOV 12 1973

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an original proceeding seeking a writ of supervisory control or other appropriate writ and seeking, in effect, a declaratory judgment on a rule of law.

Petition is by the State seeking to set aside an order of the district court sitting in Yellowstone County after change of venue from Custer County, the Hon. M. James Sorte presiding. That order declared section 95-503, R.C.M. 1947, unconstitutional; permitted defendant to present the question of mental disease as a defense before the jury; and, declared the rule of law for the defense of mental disease to be that of the American Law Institute's Model Penal Code and foreclosing the so-called M'Naghten rule as set forth in State v. Noble, 142 Mont. 284, 384 P.2d 504.

The issues here arise out of a first degree murder charge against defendant William E. French, Jr., as a result of the killing of Douglas Fleming on March 5, 1973, in Miles City, Montana. On March 7, 1973, Judge A. B. Martin ordered a psychiatric examination pursuant to section 95-505, R.C.M. 1947. Such examination was had. On March 31, 1973, counsel for defendant sought and received an order for production of autopsy reports, statements, photographs, physical evidence, records, tapes and F.B.I. records concerning the deceased. Bail was denied defendant after hearing. Bail was also denied defendant by this Court.

On April 28, 1973, counsel for defendant gave notice under section 95-503, R.C.M. 1947, of the defense of mental disease or defect. On defendant's motion, the district judge ordered defendant transferred from the Yellowstone County jail to the Billings Deaconess Hospital for medical and psychiatric examination. Also, on defendant's motion Judge Martin was disqualified. Judge M. James Sorte assumed jurisdiction.

At this point, on June 11, 1973, defendant moved the court to (1) conduct a hearing without a jury under section 95-507(a), R.C.M. 1947, to determine the mental condition of defendant, and (2) to determine whether such mental condition was sufficient to exclude responsibility for the acts committed and the crime charged. The court ordered a hearing "to determine the mental condition of the defendant at the time of the commission of the offense charged and his mental condition at the present time."

On July 18, 1973, Judge Sorte made findings of fact and conclusions of law that (1) defendant was fit to proceed and assist in his defense, and (2) defendant's mental condition at the time of the offense was not a defect sufficient to exclude responsibility and that he had the ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

On August 9, 1973, venue was changed from Custer to Yellowstone County and the case was set for trial on October 9, 1973.

On September 19, 1973, defendant made a motion which asked the court:

> "* * * for a ruling that section 95-503, R.C.M. 1947, as amended is unconstitutional for the reason that said section of the Montana Code gives advantage to the State and provides no reciprocity to the defendant. [Defendant had already given notice of the defense under the statute on April 28, 1973, and had the aforementioned hearing leading to Judge Sorte's order of July 18, 1973.]

> "The defendant, having been compelled under this section to plead his defense to the charge affirmatively, has had his constitutional rights irrevocably jeopardized and can never have a fair trial as a result thereof.

> "It is further moved that the case be dismissed." (Paraphrased material supplied.)

On October 1, 1973, Judge Sorte denied the motion and stated that he felt obligated to follow State ex rel. Sikora v. District Court, 154 Mont. 241, 462 P.2d 897, in holding that notice of the defense of insanity does not violate the Constitutions of Montana or the United States.

On that same day, Judge Sorte ordered the State to submit to defendant the names of rebuttal witnesses to the defense of insanity. On October 2, 1973, the State furnished notice that Dr. M. F. Gracia was the only known rebuttal witness at that time. The State gave the names of two other rebuttal witnesses on October 5, 1973.

On October 2, 1973, Judge Sorte notified all counsel of his intentions:

1. To allow the defense to defend on the grounds of insanity at the trial on the merits, and

2. He would not instruct on the M'Naghten rule because he believed that rule had been abolished by the new Montana Criminal Procedure Code.

On October 9, 1973, the date set for trial, Judge Sorte met with counsel, dismissed the jury, and in proceedings in chambers ruled, in addition to the above, that section 95-503, R.C.M. 1947, was unconstitutional relying on Wardius v. Oregon, ____U.S.____, 93 S.Ct.____, 37 L ed 2d 82, 41 L.W. 4804.

The petition for a writ of supervisory control was invited by the trial judge. Both the State and defense seek a clarification of the issue. The petition seeks a writ directing the district court to declare the proceedings of October 9, 1973, null and void, and to determine that:

1. Section 95-503, R.C.M. 1947, is constitutional.

2. The defendant be foreclosed from presenting the defense of mental disease or defect at the time of the alleged crime to the jury, and

3. The M'Naghten rule as set forth in Noble be declared to be the rule of law in Montana.

The issue concerning the constitutionality of section 95-503, R.C.M. 1947, is clearly moot in this case. Defendant gave notice and sought the hearing heretofore described. Receiving what he considers to be an adverse decision, he now attacks the constitutionality of the very statute of which he sought to take

- 4 -

advantage. Had he believed his rights were truly jeopardized by the statute, he should have attacked it initially rather than seeking relief under its provisions and then alleging it unconstitutionally deprives him of his rights.

Defendant's contention might have merit were he able to show prejudice to his case. However, the essence of his contention is that he lacks the reciprocity required by <u>Wardius.</u> In fact, he has received the names of three rebuttal witnesses from the State, pursuant to Judge Sorte's order. Here, any favorable decision to defendant could give him no more than he already has, namely, the names of the State's intended rebuttal witnesses.

From the foregoing it follows that we must apply the rule that this Court will not decide upon the constitutionality of legislative enactments unless it is absolutely essential to the disposition of the case. State ex rel. Douglas v. District Court, ____Mont.____, 507 P.2d 1055, 30 St.Rep. 354; State ex rel. Hammond v. Hager, ____Mont.____, 503 P.2d 52, 29 St.Rep. 945. A decision on the constitutionality of section 95-503, R.C.M. 1947, was and is unnecessary, therefore we hold that portion of Judge Sorte's order of October 9, 1973, declaring section 95-503, R.C.M. 1947, unconstitutional to be null and void.

The State next contends defendant is foreclosed from presenting the defense of insanity to the jury at trial. It argues that Chapter 5, Title 95, R.C.M. 1947, contemplates that a defendant relying on the defense of insanity may either (1) try the issue to the trial judge alone in accordance with section 95-507(a), R.C.M. 1947, or (2) try the issue to the jury at trial. He cannot however do both. It argues that defendant, having proceeded to a hearing under section 95-507(a), R.C.M. 1947, is now foreclosed from presenting that defense to the jury. In other words, the State's position is that defendant must choose between the alternatives, and having chosen one, cannot pursue the other. We do not agree.

- 5 -

In our opinion, it was the legislature's intent to give the trial judge the power to commit the defendant to a state institution without a trial in either of two cases: (1) if the defendant is not fit to proceed, which situation is covered by section 95-506, R.C.M. 1947, or (2) if the defendant at the time of the criminal conduct charged suffered from a mental disease or defect which rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, which situation is covered by section 95-507, R.C.M. 1947. Here, we are concerned with the latter. The Revised Commission Comment to section 95-507, R.C.M. 1947, in regard to subdivision (a), states in part:

> "Under subdivision (a) in cases of extreme mental disease or defect where the exclusion of responsibility is clear, trial can be avoided and the defendant immediately committed as irresponsible."

That comment makes it clear that if, in the judge's opinion and after a hearing if requested by either attorney, a defendant was clearly suffering from mental disease at the time of the crime then the judge can acquit the defendant and have him committed to a state institution forthwith. The purpose is plain-- to avoid a costly trial where the mental defect is plain and obvious. Such procedure does not deprive a defendant of the defense of mental defect at trial. Had the legislature intended the hearing contemplated by section 95-507(a), R.C.M. 1947, to forclose a defendant from his right to present a defense of mental defect to a jury, then it would have clearly spelled that out in the statute.

The State relies on State v. Olson, 156 Mont. 339, 480 P.2d 822. In Olson, the defendant advanced the proposition that sections 95-507 and 95-508, R.C.M. 1947, provided a statutory procedure for bifurcation of the issues of mental defect and guilt or innocence. That was squarely rejected. To suggest that the holding in Olson supports the State's contention that presentation of the issue of mental defect to the trial judge

- 6 -

pursuant to section 95-507(a), R.C.M. 1947, precludes presentation of that issue to the jury at trial is untenable. To adopt the State's contention would fly in the face of Olson, in that since the issue has been decided by the trial judge and would be foreclosed from presentation to the jury, the trial would be in fact bifurcated. We find the State's position to be without merit.

Finally, the State asks this Court to reaffirm the M'Naghten rule and the "irresistible impulse" rule as set forth in State v. Noble, 142 Mont. 284, 298, 384 P.2d 504. This we will not do. In Noble, this Court gave extensive consideration to the problem of defining the standards of criminal irresponsibility. There we stated:

> "Having reviewed the authorities, both legal and scientific, we are unwilling at this time to abandon the established position of this court having found nothing better that would justify a change."

Since Noble, Chapter 5 of Title 95, R.C.M. 1947, was enacted by the legislature. That chapter defines criminal irresponsibility in section 95-501(a), R.C.M. 1947, which provides:

> "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he is unable either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

That definition is the same as that adopted by the American Law Institute in its Model Penal Code, with one exception. Article 4, Section 4.01, of the Model Penal Code, provides:

> "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of the law."

The Montana Legislature in section 95-501(a), R.C.M. 1947, substituted the phrase "is unable" for the phrase "lacks substantial capacity" in the Model Penal Code.

While this Court has not abandoned its tests of criminal irresponsibility as set forth in Noble, it is clear the legislature has taken the matter into its own hands. In view of

the nearly identical wording of the two rules, and in view

of the Revised Commission Comments to section 95-501(a), R.C.M.

1947, which in pertinent part state:

> "This section is intended to expand the applica-
> tion of the existing Montana law to include any
> psychical abnormalities or subnormalities such
> as emotional deficiencies that have reached the
> dimension that they can be termed mental diseases
> or defects and not otherwise. The section expands
> the application of existing Montana law." (Emphasis
> added)

this Court concludes that the M'Naghten and "irresistible

impulse" rules no longer have application in those terms.

The test for criminal irresponsibility is as set forth in

section 95-501(a), R.C.M. 1947.

One further matter requires comment here--that is the effect

of the substitution of the phrase "is unable" found in Montana's

statute for the phrase "lacks substantial capacity" found in

the Model Penal Code. The Revised Commission Comments to

section 95-501(a), R.C.M. 1947, suggest a guide:

> "While it recognizes the objective of the more
> modern tests that lack of understanding and lack
> of control need not be total in order to excuse,
> and that the question is one of degree, yet it does
> not excuse (as does the Model Penal Code rule), for
> a 'substantial impairment' of either of these capa-
> cities. Rather in order to excuse, the impairment
> must be so great that the trier of fact can say that
> the accused was unable to appreciate the criminality
> of his conduct, or that he was unable to conform his
> conduct to the requirements of society."

Thus it is clear the legislature intended a stricter test

for mental incapacity than seems contemplated by the Model Penal

Code. We will not set forth any rigid language for trial courts

to use in instructing a jury, but will simply recommend that

they adopt an approach based on Chapter 5, Title 95, R.C.M. 1947,

and the Revised Commission Comments thereto. The scope and

extent of the instructions in a given case will necessarily be

governed by the particular evidence in the case. For a recent

treatment of a similar problem see State v. Grimm, (W.Vir.1973),

195 S.E.2d 637.

The cause is remanded to the district court for proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 9 -