No. 12753

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

STATE OF MONTANA ex rel. WILLIAM T. MAIN,

Relator,

-vs-

THE DISTRICT COURT OF THE FIFTH JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND
FOR THE COUNTY OF BEAVERHEAD, and THE
HONORABLE FRANK E. BLAIR, Presiding Judge,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Smith, Smith and Sewell, Helena, Montana
Chadwick H. Smith argued, Helena, Montana

For Respondents:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
W. G. Gilbert III, County Attorney, argued, Dillon,
Montana

---

Submitted: May 23, 1974

Decided: JUL 3 1 1974

Filed: JUL 3 1 1974

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an original proceeding wherein relator William T. Main petitions for a writ of supervisory control or other appropriate writ seeking in effect dismissal of an Information and a finding of acquittal by the district court of the fifth judicial district, county of Beaverhead.

The issues here arose out of the filing of an Information charging the crimes of rape and assault in the first degree. The Information was filed on March 2, 1971. Relator was represented by counsel who represented to the court that relator suffered from a mental defect and required a psychiatric examination. The court granted counsel's request and petitioner was committed to the state hospital for evaluation without an arraignment.

Following examination and evaluation, a report was made to the court by Dr. M.F. Gracia, clinical director at the state hospital. The report stated relator was suffering from a mental defect or disease which prevented him from conforming his conduct to the requirements of the law at the time of the criminal conduct charged and further that relator's capacity to understand the proceedings against him and assist in his own defense was impaired. This report was filed on April 14, 1971. On July 3, 1971, following the submission of briefs by both parties, the court found relator was suffering from mental disease which prevented him from under-standing the nature of the proceedings against him and from assisting in his own defense. The court committed relator to the state hospital until such time as he was able to understand the nature of the pro-ceedings against him and to assist in his own defense.

Relator remained at the state hospital pursuant to the court's order, undergoing treatment under the direction of Dr. Gracia. On August 4, 1972, relator's guardian moved the court to allow relator to be transferred to American Lake Hospital in Tacoma, Washington, ( a federal hospital) for more extended treatment. This treatment

was recommended by a staff psychiatrist at the state hospital. No action was taken by the court for nearly one year, when on July 9, 1973, relator moved the court to dismiss the Information and grant a judgment of acquittal on the grounds that at the time of the crime relator was suffering from a mental disease or defect which rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

A hearing was had on relator's motion on November 13, 1973. Relator offered the testimony of Dr. Gracia and the state offered the testimony of a Dr. Stanley G. Moisey, a practicing psychiatrist from Missoula, Montana. The transcript of this hearing along with all of the files and exhibits of this case are before this Court for consideration.

Dr. Gracia testified as to relator's psychiatric history:

1. That he had first examined relator in 1966 on an emergency commitment and relator was under his care for some two and a half months.

2. That relator had a history of mental illness dating back to 1962 according to medical records of the United States Army. These records indicate he was treated at Letterman General Hospital in San Francisco for psychiatric disorders.

3. That from 1962 to the time of the alleged crimes, relator had a history of commitment and recommitment in mental institutions including the American Lake Hospital in Washington.

Based on the treatments given relator at the state hospital under the supervision of Dr. Gracia and the medical records available from other mental treatment institutions, Dr. Gracia diagnosed relator's condition to be acute schizophrenia, schizophrenia paranoid type, anti-social personality and schizophrenic-chronic undifferentiated type. Dr. Gracia's opinion, after examining and treating relator, was that he " * * * was not able to conform his conduct to the requirements of the law at the time of the criminal conduct charged * * *."

Dr. Moisey testified for the state and stated he had examined relator between October 18 and October 29, 1973. In addition he interviewed the victim, the county attorney of Beaverhead County and reviewed the case histories of the state hospital and the American Lake Hospital, Tacoma, Washington, in regard to relator.

With this background of information, Dr. Moisey testified that in his opinion he did "not see evidence that he was so grossly mentally disturbed that he was unable to appreciate what he was doing at the time." In his opinion relator was presently capable of standing trial.

In weighing the consideration to be given Dr. Moisey's testimony we note that just three questions before the above quoted testimony, Dr. Moisey testified: "Well from my examination of William Main, it was not possible for me to determine his state of mind at the time of the alleged offense in 1971." Dr. Moisey's examination of relator occurred two and one half years after the offense and no testimony was offered by Dr. Moisey or the state with regard to relator's ability at the time of the alleged offense to conform his conduct to the requirements of the law.

On December 11, 1973, after the hearing, Judge Blair entered an order denying relator's motions on the basis that Dr. Moisey expressed an opinion that: (a) in spite of his history of mental disease, defendant has the capacity to understand the proceedings against him and to assist in his own defense; (b) that defendant was able to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law at the time of the criminal conduct charged. On that basis Judge Blair stated that a factual question for the jury was raised.

On December 24, 1973, the county attorney dismissed the original Information and refiled an identical Information charging relator with the same offenses.

Three issues are presented in this application for a writ of supervisory control, all are directed to the trial court's abuse of discretion:

- 4 -

1. The district court committed reversible error in refusing to grant relator's motion to dismiss and for judgment of acquittal on the grounds that the only competent evidence shows that at the time of the alleged offense relator was unable to appreciate the criminality of his conduct or to conform his condust to the requirements of the law because of a mental disease or defect.

2. The district court committed reversible error in refusing to dismiss the Information on the ground that so much time had elapsed since the arrest that it would be unjust to resume the criminal proceedings under the circumstances of this case.

3. The issues presented by this application are not rendered moot by the action of the district court in dismissing the Information against relator and allowing immediate refiling of an identical Information.

In our discussion of the issues raised we will consider the issues as one.

Relator argues that in failing to grant relator's motion to dismiss and for a judgment of acquittal the trial court committed error. The controlling statutes are sections 95-501, 505, 507, R.C.M. 1947. Under the provisions of section 95-501, in order to sustain a criminal charge the state must be able to prove criminal intent:

> "95-501. Mental disease or defect excluding responsibility. (a) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he is unable either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

In this case the defense of mental disease or defect was given and the district court, following the provisions of section 95-505, R.C.M. 1947, sent relator to the state hospital for an evaluation and to determine whether or not relator understood the criminality of his conduct or could conform his conduct to the requirements of the law at the time of the criminal conduct charged or had the capacity to assist in his defense.

Section 95-505, R.C.M. 1947, provides:

"95-505. Psychiatric examination of defendant with respect to mental disease or defect. (a) Whenever the defendant has filed a notice of intention to rely on the defense of mental disease or defect excluding responsibility, or there is reason to doubt his fitness to proceed, or reason to believe that mental disease or defect of the defendant will otherwise become an issue in the cause, the court shall appoint at least one (1) qualified psychiatrist or shall request the superintendent of the Montana state hospital to designate at least one (1) qualified psychiatrist, which designation may be or include himself, to examine and report upon the mental condition of the defendant. The court may order the defendant to be committed to a hospital or other suitable facility for the purpose of the examination for a period of not exceeding sixty (60) days or such longer period as the court determines to be necessary for the purpose and may direct that a qualified psychiatrist retained by the defendant be permitted to witness and participate in the examination.

"(b) In such examination any method may be employed which is accepted by the medical profession for the examination of those alleged to be suffering from mental disease or defect.

"(c) The report of the examination shall include the following:

"(1) A description of the nature of the examination;

"(2) A diagnosis of the mental condition of the defendant;

"(3) If the defendant suffers from a mental disease or defect, an opinion as to his capacity to understand the proceedings against him and to assist in his own defense.

"(4) When a notice of intention to rely on the defense of irresponsibility has been filed, an opinion as to the ability of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law at the time of the criminal conduct charged; and

"(5) When directed by the court, an opinion as to the capacity of the defendant to have a particular state of mind which is an element of the offense charged.

"If the examination cannot be conducted by reason of the unwillingness of the defendant to participate therein, the report shall so state and shall include, if possible, an opinion as to whether such unwillingness of the defendant was the result of mental disease or defect.

"The report of the examination shall be filed (in triplicate) with the clerk of court, who shall cause copies to be delivered to the county attorney and to counsel for the defendant."

Having followed the above procedural statutes, and having received the statements of evaluation and prognosis of the two psychiatrists the court was then confronted with the alternative actions that can be applied under the provisions of section 95-507(a), R.C.M. 1947:

"95-507. Determination of irresponsibility on basis of report--access to defendant by psychiatrist of his own choice--form of expert testimony when issue of responsibility is tried. (a) If the report filed pursuant to section 95-505 finds that the defendant at the time of the criminal conduct charged suffered from a mental disease or defect which rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, and the court, after a hearing if a hearing is requested by the attorney prosecuting or the defendant, is satisfied that such mental disease or defect was sufficient to exclude responsibility, the court on motion of the defendant shall enter judgment of acquittal on the ground of mental disease or defect excluding responsibility."

The problem here is whether under the discretionary provisions of section 95-507, there was an abuse of discretion in giving such weight to the testimony of Dr. Moisey as to now require the question of mental competency to go to a jury.

Respondent court argues that this is a matter entirely up to the discretion of the trial court; that there have been three hearings before the court during which time the court could observe relator and that in employing Dr. Moisey the court could and did get medical testimony that, in the court's opinion, was such that he (the trial judge) felt the matter should be submitted to a jury.

Relator argues that Dr. Moisey's testimony failed to raise a factual question, noting that Dr. Moisey did not, and he testified he could not, testify as to relator's mental condition at the time of the criminal act charged, as required by section 95-507, R.C.M. 1947. We agree.

- 7 -

The statute was particularly designed to procedurally process just such a case as we have before us here. Relator has been in custody over three and one-half years at the state hospital and the overwhelming weight of all of the testimony, much of which is based on the medical records before the court, is that relator suffers from such mental disease or defect as to exclude responsibility for his acts.

There is no medical testimony contrary to Dr. Gracia's testimony that relator "was not able to conform his conduct to the requirement of the law at the time of the criminal conduct charged." Dr. Gracia based this opinion on (1) an examination of relator several weeks after the alleged crime; (2) upon extensive psychological testing and medical examination including observation by staff personnel every day for several years; (3) upon the study of relator's social history and history of mental illness dating back to 1962; and (4) the doctor's personal contact with relator beginning in 1966.

In State ex rel. Krutzfeldt v. District Court, ____Mont. ____, 515 P.2d 1312, 1315, 30 St.Rep. 993, this Court discussed the procedures provided for in section 95-507(a), R.C.M. 1947:

> " * * * That comment makes it clear that if, in the judge's opinion and after a hearing if requested by either attorney, a defendant was clearly suffering from mental disease at the time of the crime then the judge can acquit the defendant and have him committed to a state institution forthwith. The purpose is plain--to avoid a costly trial where the mental defect is plain and obvious. * * *"

The entry of judgment of acquittal by the trial court does not mean the relator goes free. The provisions of section 95-508(a), R.C.M. 1947, procedurally provide for these cases. In State v. Taylor, 158 Mont. 323, 335, 491 P.2d 877, this Court in interpreting section 95-508(a) said that a person so committed would not be released from the state hospital unless the release was recommended by the superintendent and the person committed could establish at a hearing held before the district judge

who signed the commitment, beyond a reasonable doubt that he would not be dangerous in the forseeable future. We noted in Taylor, that the judicial supervision under these circumstances "is to protect the public as well as the individual by insuring that standards for release are not subverted by allowing the final determination to be according to the individual subjective standards of the hospital staff." Under Montana statutes only the trial court, the committing court, has the power to discharge or conditionally release.

Therefore, we direct the trial court to reverse its order entered on December 11, 1973 and enter a judgment of acquittal on the ground of mental disease or defect excluding responsibility. Thereafter, we direct that commitment proceedings be held in accord with the provisions of section 95-507, R.C.M. 1947.

_____
                          Justice

We concur:

_____

_____

_____
Justices