No. 13760

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

_____

THE STATE OF MONTANA,

          Plaintiff and Appellant,

-vs-

DARYL D. HAGERUD,

          Defendant and Respondent.

_____

Appeal from:  District Court of the Eleventh Judicial District,
            Honorable Robert C. Sykes, Judge presiding.

Counsel of Record:

    For Appellant:

        *mike*
        Hon. Greely, Attorney General, Helena, Montana
        William A. Douglas, County Attorney, argued,
         Libby, Montana
        Ian Christopherson argued, Libby, Montana

    For Respondent:

        Morrison & Hedman, Whitefish, Montana
        Frank Morrison, Sr. argued, Whitefish, Montana

_____

               Submitted: September 15, 1977

                    Decided:

Filed:

*Thomas J. Kearney*
               Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Following a nonjury evidentiary hearing, the District Court of Lincoln County entered judgment acquitting defendant of deliberate homicide on the grounds of mental defect excluding responsibility. The state appeals from this judgment, or in the alternative seeks review and reversal by writ of supervisory control.

During the late afternoon, September 13, 1976, at the Frontier Bar in Rexford, Montana, defendant was drinking and playing pool with Wilma Eisenman, Fred Wales and Marilyn Mullin. Defendant, who had been divorced several months earlier, was "involved" with Wilma to the point they were considering marriage. During the pool game Wales made several comments to Wilma about certain things she had done at a party a few years earlier. Defendant, upset by these remarks, stormed into the rest room.

Wales followed defendant into the rest room, carrying a pool cue and laughing about his conversation with Wilma. When defendant and Wales emerged from the rest room, defendant was holding the pool cue in one hand and Wales by the shirt with the other. Defendant shoved Wales into a corner and began striking him with the pool cue and beating him with his fists. At this point Wilma and Marilyn left the bar and Marilyn called the law. After she completed the phone call, Marilyn saw defendant leave the bar.

When Marilyn re-entered the bar, Wales was sprawled across the pool table. Wales said to her: "I can't figure out why Daryl did what he did to me." Wales then stood up, staggered around the bar, and collapsed dead. The broken pool cue and a broken beer bottle lay nearby.

An autopsy by a forensic pathologist revealed that, in addition to numerous bruises about Wales' body, Wales had sustained

four blows on his upper forehead and the top and back of his head. Two of these blows could have been inflicted by an instrument similar to a pool cue; the other two blows could have been inflicted by an instrument such as a beer bottle. The pathologist concluded that any one or all of these four blows were the direct and proximate cause of Wales' death.

The defendant could not remember what happened in the rest room.

The Lincoln County attorney charged defendant with the crime of deliberate homicide by information filed in the District Court. Defendant timely filed a notice of intent to interpose two defenses: (1) mental incompetence excluding responsibility, and (2) self-defense. The district judge ordered defendant to Warm Springs State Hospital for psychiatric examination.

Dr. William Alexander, the clinical director at Warm Springs State Hospital, made a psychiatric examination and evaluation of defendant and rendered a report to the District Court. Dr. Alexander reported defendant had suffered severe head injuries in an industrial accident in 1966 resulting in organic brain damage. He indicated defendant was suffering from non-psychotic brain syndrome associated with mild brain trauma and classified defendant as having a passive-aggressive personality, dependent type. Dr. Alexander concluded with an explanation of defendant's present condition in this language:

> "Patient is aware of the nature of the charges
> against him and he is able to assist his lawyer
> in his own defense. He is aware of the criminal-
> ity of the alleged charges. He is able to con-
> duct himself according to the requirements of the
> law, and although he is able to have a particular
> state of mind which is an element of the offense
> charged, it seems a certainty that there was
> never any intention on his part to produce the
> actual end result of the fight. It is felt that
> this patient, in many ways, is a victim of
> circumstances."

In a later deposition, Dr. Alexander further explained

his evaluation. He concluded that at the time of commission of the offense defendant was unable to conform his conduct to the requirements of the law because of a combination of his mental defect, his consumption of alcohol prior to the altercation, and his " * * * being in a particular situation at a particular time."

A psychological report by Katherine Gallagher, a psychologist at Warm Springs State Hospital, accompanied Dr. Alexander's report. She concluded that defendant suffered from a pressing deep-seated anxiety, hysterical neurosis and nonpsychotic organic brain syndrome.

At defense counsel's request, defendant was additionally examined by psychiatrists Dr. Robert Wetzler and Dr. Sol Levy, both of Spokane, Washington, and by a Kalispell, Montana psychologist, Dr. Herman Androes. At the county attorney's request, defendant was also examined by Dr. Richard Jarvis, a psychiatrist from Seattle, Washington.

All concurred with Dr. Alexander's diagnosis that on the day of the altercation defendant suffered from organic brain syndrome. In addition some of the examiners classified defendant as a passive-aggressive personality type; others thought he might have hysterical neurosis.

The defendant's and the state's examiners disagreed concerning the effect of defendant's mental defect on his conduct at the time of the alleged offense. Drs. Levy and Androes concluded that at the time of the alleged offense, defendant was unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Dr. Wetzler thought defendant's mental disorder impaired his ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Dr. Jarvis concluded that defendant was not impaired

- 4 -

to the extent of legal insanity, but rather that he had "intact" criminal responsibility at the beginning of the altercation. Dr. Jarvis conceded that defendant may have been carried away by overwhelming emotion in the course of the assault "going berserk, so to speak".

On January 20, 1977, the District Court, sitting without a jury, conducted a pretrial hearing on the defense of mental defect excluding responsibility. The reports of all examiners and various depositions were admitted in evidence. On February 3, the District Court entered findings of fact, conclusions of law, and a judgment of acquittal on the grounds of mental defect excluding responsibility. Defendant was committed to Warm Springs State Hospital. Following denial of the state's motion to reconsider, the state appealed from the judgment and alternatively requested this Court to review and reverse the District Court judgment by supervisory control in the event this Court felt the state had no right of direct appeal.

The issues raised by the parties in this proceeding can be summarized in this manner:

(1) Does the state have the right of direct appeal from the judgment?

(2) Is the judgment subject to review by this Court by writ of supervisory control?

(3) If the judgment is reviewable on the merits, should it be affirmed, modified or reversed?

The state contends that it has a statutory right of direct appeal from the judgment under section 95-2403(b)(1), R.C.M. 1947, granting the state the right of appeal " * * * from any court order or judgment the substantive effect of which results in * * * dismissing the case". The state argues that the substantive effect of the District Court judgment is a dismissal of the case

- 5 -

because the state will not be able to prove an essential element of the offense--the required mental state.

The defendant asserts that the state has no right of appeal under common law, the Montana Constitution, or by statute. He urges that section 95-2403(b)(1) does not grant the state the right of appeal in this case because the substantive effect of the judgment is an acquittal of the defendant rather than a dismissal of the case and any statutory right of appeal granted the state is in derogation of the common law and must be strictly construed.

The state's right to a direct appeal from the District Court judgment in this case is governed exclusively by statute. Such right did not exist at common law. State v. Peck, 83 Mont. 327, 271 P. 707 (1928). The Montana Constitution does not specifically address the state's right of appeal in a criminal case. The controlling statute is section 95-2403 which provides in pertinent part:

> "(a) Except as authorized by this code, the state may not appeal in a criminal case.
>
> "(b) The state may appeal from any court order or judgment the substantive effect of which results in:
>
> "(1) dismissing a case * * *".

Although it is generally agreed that a statute in derogation of the common law must be strictly construed, this rule of statutory construction cannot be used to defeat the obvious purpose of the legislature, nor to lessen the scope plainly intended to be given the statute. 3 Sutherland, Statutory Construction, Sec. 61.02, p. 46 (4th Ed. 1974). Here the intention of the legislature is clear from the language of the statute and extrinsic rules of statutory construction may not be employed to ascertain legislative intent. W. R. Grace Co. v. Dept. of Revenue, ____Mont.____, 567 P.2d 913, 34 St.Rep. 713 (1977),

- 6 -

and cases cited therein. Here the legislature clearly granted the state the right of appeal "from any court order or judgment the substantive effect of which results in * * * dismissing the case".

Nonetheless, the language of the statute grants the state no right of direct appeal in this case. The substantive effect of the judgment here is not dismissal of the case. The substantive effect is acquittal of the defendant. The two terms are neither mutually inclusive nor synonymous. In a dismissal of the case, defendant is entirely free from further restrictions on his liberty or further control by the court; in an acquittal by reason of mental defect excluding responsibility, defendant must be committed to the Warm Springs State Hospital and must remain there until the committing court finds that he may be discharged or conditionally released without danger to himself or others. Section 95-508, R.C.M. 1947.

In the alternative, the state seeks to obtain review of the District Court's decision by writ of supervisory control.

Both Montana's 1889 Constitution and 1972 Constitution vested in the Supreme Court supervisory control over the District Courts. The 1889 Constitution provided that this Court " * * * shall have a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law" in addition to its appellate jurisdiction. Art. VIII, Section 2, 1889 Montana Constitution. In 1928 this Court held that the process of "appeal" is a creature of statute. State v. Peck, supra. Under the 1972 Montana Constitution, the Supreme Court " * * * has general supervisory control over all other courts" in addition to appellate jurisdiction. Art. VII, Section 2(2), 1972 Montana Constitution. This Court is further granted "original jurisdiction to issue, hear, and determine writs of

habeas corpus and such other writs as may be provided by law".
Art. VII, Section 2(1), 1972 Montana Constitution.

We have previously held that one of the functions of supervisory control is to enable this Court to control the course of litigation in the District Courts where these courts are proceeding within their jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate. State ex rel. Whiteside v. District Court, 24 Mont. 539, 63 P. 395 (1900). Thus where a District Court is acting under a mistake of law and no direct appeal exists, a review of the District Court's decision through a writ of supervisory control may be entertained. See State ex rel. Nelson v. Dist. Ct., ____Mont.____, 566 P.2d 1382, 34 St.Rep. 688 (1977).

Montana's Code of Criminal Procedure provides a pretrial method for determining a defendant's competency at the time he allegedly committed the crime charged. Section 95-501 through 509, R.C.M. 1947. Upon defendant's interposing a defense of mental disease or defect excluding responsibility, or upon its own motion, the District Court must order a psychiatric examination of defendant. Section 95-505(1), R.C.M. 1947. Section 95-507(1), R.C.M. 1947, then provides:

> "If the report filed under section 95-505 finds that the defendant at the time of the criminal conduct charged suffered from a mental disease or defect which rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, and the court, after a hearing if a hearing is requested by the attorney prosecuting or the defendant, is satisfied that the mental disease or defect was sufficient to exclude responsibility, the court on motion of the defendant shall enter judgment of acquittal on the ground of mental disease or defect excluding responsibility."

Then, what is the proper standard for measuring the proof required to satisfy the court "that the mental disease or defect

was sufficient to exclude responsibility?"

The Revised Commission Comment to Section 95-507(1) states in part:

> "Under subdivision (a) [now subdivision (1)] in cases of extreme mental disease or defect where exclusion of responsibility is clear, trial can be avoided and the defendant immediately committed as irresponsible."

In State ex rel. Krutzfeldt v. Dist. Court, 163 Mont. 164, 170, 515 P.2d 1312 (1973), we said:

> "That comment makes it clear that if, in the judge's opinion and after a hearing if requested by either attorney, a defendant was *clearly* suffering from mental disease at the time of the crime then the judge can acquit the defendant and have him committed to a state institution forthwith. The purpose is plain--to avoid a costly trial where the mental defect is plain and obvious."

The state contends that the proper standard of proof was not met in this case because there was conflicting medical testimony in the record. The state argues that it was the legislature's intent to allow the District Court to acquit a defendant by reason of such a mental disease or defect only when there was absolutely no question or conflict of medical records, medical opinion or testimony that defendant was in fact suffering from such a mental disease or defect. While we do not agree with the state's strict formulation of this standard of proof, we do agree that the District Court did not apply the proper standards here.

Section 95-507(1) requires that if the court "is satisfied" that the mental disease or defect is sufficient to exclude responsibility, the court must enter a judgment of acquittal by reason thereof. In satisfying itself of defendant's mental disease or defect, the court cannot act arbitrarily or capriciously. Nor does the term "satisfied" indicate that the court's belief of defendant's mental incompetence may be based upon a mere preponderance of the evidence. The standard of proof required is

proof such as to leave no room for a difference of opinion among reasonable minds. McRuffin v. State, 91 Tex.Crim.R. 569, 240 S.W. 309 (1922); Wilcoxin v. Commonwealth, 138 Ky. 846, 129 S.W. 309, (1910).

Our decisions in State ex rel. Main v. Dist. Court, 164 Mont. 501, 525 P.2d 28 (1974) and State ex rel. Nelson v. District Court, supra, are not to the contrary. In Main the relator petitioned for a writ of supervisory control when the District Court refused to acquit him by reason of mental disease or defect excluding responsibility. Although conflicting medical opinions existed in the record, this Court held that the testimony of the state's medical expert did not raise a factual question. The overwhelming weight of all the testimony was that relator suffered from such a mental disease or defect as to exclude responsibility.

In Nelson, relator also petitioned for a writ of supervisory control upon a similar refusal by the District Court. There relator asserted the defense of temporary insanity in which the facts surrounding the commission of the offense were critical to his defense. While Dr. Alexander, the only medical expert testifying, concluded from the facts Nelson related to him that Nelson was temporarily insane, we approved the trial court's ruling that Dr. Alexander's opinion was based upon determinations of disputed facts which were for a jury to determine.

The circumstances surrounding the commission of the offense in the instant case are as important here as they were in Nelson. Although Hagerud's defense was not one of temporary insanity, experts for both sides stated that their evaluations of Hagerud's responsibility were based on the facts immediately surrounding the commission of the offense as related to them by Hagerud, and their evaluations could change depending upon what those facts

were.  Where, as here, the state contests those facts, and where they are crucial to establishing defendant's nonresponsibility under section 95-507(1), it is error for the District Court in this type of summary pretrial procedure to acquit a defendant by reason of mental disease or defect excluding responsibility.

Defendant contends that to permit the state to obtain review of the district court's decision acquitting defendant by reason of mental disease or defect excluding responsibility under section 95-507(1) would put defendant in double jeopardy and violate his constitutional rights.  We disagree.

The United States Constitution provides that no person shall " * * * be subject for the same offense to be twice put in jeopardy of life or limb * * *".  Fifth Amendment, United States Constitution.  The Fifth Amendment's prohibition applies to state court criminal proceedings through the "due process clause" of the Fourteenth Amendment.  Benton v. Maryland, 395 U.S. 784, 23 L ed 2d 709, 89 S.Ct. 2056 (1969).  This Court has previously recognized that principle.  State v. Cool, ____Mont.____, 568 P.2d 567, 34 St.Rep. 1029 (1977); State v. Cunningham, 166 Mont. 530, 535 P.2d 186 (1975).  Additionally, the 1972 Montana Constitution declares: " * * * No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction." Montana Constitution, Art. II, Section 25.

In order for an accused to be twice put in jeopardy, he must first be put in jeopardy once.  Montana law provides that jeopardy attaches in a criminal trial when the first witness is sworn.  State v. Cunningham, 166 Mont. 530, 535 P.2d 186 (1975).  The federal rule provides that jeopardy attaches when the jury is sworn.  Downum v. United States, 372 U.S. 734, 10 L ed 2d 100, 83 S.Ct. 1033 (1963).  The constitutional validity of Montana's rule is currently before the United States Supreme Court in the appeal of Bretz v. Crist, 546 F.2d 1336 (9th Cir. 1976), appeal

- 11 -

filed sub. nom. Crist v. Cline, 45 U.S.L.W. 3684 (U.S. Feb. 18,
   No. 76-1200),
1977,/(this was a habeas corpus proceeding in Federal Court
after relief was denied in state court sub. nom. State ex rel.
Bretz and Cline v. Sheriff, 167 Mont. 363, 539 P.2d 1191 (1975)).
However, under neither the federal rule nor the Montana rule does
jeopardy attach prior to the commencement of the trial of the
accused.

The proceeding in this case was simply a pretrial hearing
to determine whether defendant at the time of the offense charged
was so clearly unable to appreciate the criminality of his conduct
or conform his conduct to the requirements of law that trial would
be useless. Defendant was never once placed in jeopardy because
his trial on the crime charged was never held.

The double jeopardy principle here is similar to that
involved in Serfass v. United States, 420 U.S. 377, 43 L ed 2d
265, 95 S.Ct. 1055 (1975), where a Federal Court had dismissed
an indictment by pretrial order. In Serfass petitioner argued
that although formal or technical jeopardy had not yet attached,
the court's ruling was the functional equivalent of an acquittal
on the merits because the dismissal was based on evidentiary facts
outside the indictment which would constitute a defense on the
merits. Petitioner argued that thus constructive attachment of
jeopardy had occurred barring further prosecution. However, the
United States Supreme Court held that although an accused may
raise defenses or objections before trial which are capable of
determination without a trial of the general issue, the accused
had not been placed in jeopardy because he had not been subjected
to the hazards of trial and possible conviction.

In this case defendant was never once placed in jeopardy
because he was never subjected to the possibility of conviction of
the crime charged. As jeopardy has never attached in the first

- 12 -

instance, the bar of double jeopardy must fail.

The judgment of the District Court is vacated and the cause remanded to the District Court for further proceedings in conformity with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices