No. 82-142

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

ABRAHAM KERRY CAYE,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Lake
Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

Richard Pinsoneault argued and James Manley argued,
St. Ignatius, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter argued, Assistant Attorney General,
Helena, Montana
John Frederick, County Attorney, Polson, Montana
Duke Wolf argued, Deputy County Attorney, Polson, Montana

Submitted: January 11, 1983

Decided: February 24, 1983

Filed: FEB 24 1983

Ethel M. Harrison

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from a judgment of conviction for criminal possession of dangerous drugs issued by the District Court of the Fourth Judicial District, Lake County. The appellant, Abraham Caye, filed a motion to quash the warrant alleging that the Justice Court did not have jurisdiction and that the action for which the warrant was issued, if pursued, would constitute double jeopardy for Caye. The District Court denied this motion. We affirm the judgment of the District Court in all respects.

The issue in this case is whether an arrest warrant issued for criminal trespass/mischief and the seizure of evidence pursuant to the arrest are valid notwithstanding a subsequent assertion that the prosecution is barred by former jeopardy because this defendant had already been convicted in Tribal Court.

Caye, and his girlfriend, Vicki Hitchcock, are both members of the Confederated Salish and Kootenai Tribes of the Flathead Reservation. At the time this action began, Vicki was living with her mother, Carole Hitchcock, on the reservation. On April 17, 1981, the Flathead Tribal Court ordered Caye to stay away from the residence of Carole Hitchcock. On May 2, 1981, Caye destroyed a lock on the door of the Hitchcock residence and entered the home. No one was in the residence at the time. On June 2, Caye pled guilty to criminal contempt of the Tribal Court order and was sentenced by the Tribal Court to spend 28 days at Galen State Hospital.

Unsatisfied with the Tribal Court proceedings, Carole Hitchcock filed a complaint against Caye with the Lake County

sheriff on June 1, 1981. Without knowing of the Tribal Court proceeding, the Lake County Attorney filed alternative charges of criminal mischief and criminal trespass in the Justice Court of Lake County. An arrest warrant was issued by the Justice Court on July 13, 1981.

On July 23, 1981, Caye was arrested on the reservation and taken to the Lake County jail. During a preincarceration search, Lyscergic Acid Diethylamide, LSD, was found in his possession.

He was charged in the District Court with illegal possession of dangerous drugs. Some time after the filing of the District Court criminal action and before the trial, the Justice Court action against Caye was dismissed.

On October 2, 1981, Caye filed a motion to quash the arrest warrant issued by the Justice Court because, ". . . the arrest of this Defendant ultimately proved to be conduct for which the Defendant had been tried, convicted, and sentenced in the Tribal Court of the Salish and Kootenai Tribes." The motion also provided that Caye should be protected from violation of his rights to equal protection, due process and freedom from double jeopardy. This motion was treated as a motion to suppress and denied by the District Court. Caye was found guilty of illegal possession of dangerous drugs and sentenced to 3 years in the Montana State prison with credit for time served.

The tribes of the Flathead Reservation have ceded certain concurrent jurisdiction of Indian cases to the State of Montana. It is evidenced by Tribal Ordinance 40-A Revised.

Subsection 2(a) of the Ordinance provides:

3

"Concurrent jurisdiction remains with the Tribal Court in the Tribal Government of all matters referred to in Subsection 1; and any matter initiated in either a state or Federal Government Court or the Tribal Court shall be completed and disposed of in that Court, and shall not be subject to re-examination in the courts of the other jurisdiction."

Subsection 2(b) provides:

"No person, once convicted of a crime falling within the jurisdiction of the State or Federal Government, or the Tribes, pursuant to this ordinance, shall be punished for the identical act in the courts of the other jurisdiction, but shall be accorded the benefit of the doctrine of former jeopardy as if the separate jurisdictions were one."

Pursuant to Subsection 1 of the Ordinance, the state courts and the tribal courts have concurrent jurisdiction of criminal misdemeanor cases.

The effect of the cession of concurrent jurisdiction has been discussed in Larrivee v. Morigeau (1979), ___ Mont. ___, 602 P.2d 563, 36 St.Rep. 1798, cert.den. 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 240; and State ex rel. McDonald v. District Court of the Fourth Judicial District (1972), 159 Mont. 156, 496 P.2d 78.

Caye contends that the evidence seized pursuant to the Justice Court warrant and the subsequent arrest was inadmissable. Caye grounds this assertion on the theory that the warrant has no "legal efficacy" because the Justice Court did not have jurisdiction of the cause. Therefore, he asserts, the subsequent arrest, search and seizure were illegal and the evidence thereby obtained inadmissable. Caye contends that his arrest under the Justice Court warrant was invalid because the underlying crime had previously been adjudicated in the Tribal Court and was thus barred from adjudication in the state courts pursuant to Tribal Ordinance 40-A Revised.

4

The State contends that, notwithstanding concurrent jurisdiction, Caye was properly charged and that double jeopardy does not apply in this case. Caye contends that the Justice Court action constitutes double jeopardy.

It is questionable whether the Justice Court action offends the former jeopardy provision of this Ordinance but it makes no difference here. When the complaint was filed in the Justice Court, that Court had personal jurisdiction of Caye. If Caye wished to avail himself of the protections afforded against double jeopardy, res judicata or collateral estoppel he would have had to claim them as affirmative defenses later in the Justice Court proceedings.

Former jeopardy, or double jeopardy, does not attach until the jury is empaneled and sworn. Willhauck v. Flanagan (1980), 448 U.S. 1323, 101 S.Ct. 10, 65 L.Ed.2d 1147; Crist v. Bretz (1978), 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24. In a case tried without a jury double jeopardy attaches when, "the court begins to hear the evidence." Lee v. United States (1977), 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80; Serfass v. United States (1975), 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265.

In this case, the search took place as a preliminary proceeding and before the judge heard any evidence in the Justice Court case. Procedural matters preliminary to a trial do not constitute jeopardy. Collins v. Loisel (1923), 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062.

The first jeopardy attached when the Tribal Court heard the evidence. State v. Hagerud (1977), 174 Mont. 361, 570 P.2d 1131. Caye would have been twice placed in jeopardy when a second jury was empaneled and sworn or when the judge began to hear the evidence in the Justice Court. This would

5

have been the proper time for Caye to raise the affirmative defense of former jeopardy.

The plea of former jeopardy should be raised in the court where jeopardy attaches. Here, the Justice Court was the proper tribunal for resolution of the issue, not the District Court. Since a second jeopardy did not attach before the cause was dismissed in the Justice Court, former jeopardy could not be a basis in the District Court as a ground to suppress the evidence. Therefore, Caye is not entitled to the remedies available to an individual for violation of his constitutional right to be free from being twice place in jeopardy.

We affirm the District Court's denial of Caye's motion to suppress and its judgment and conviction for illegal possession of dangerous drugs.

_____
                    Justice

We Concur:

_____
Chief Justice

_____

_____

Mr. Justice Daniel J. Shea, concurring:

I agree with the result. The essential question is whether the state court had authority to issue the warrant of arrest. It did. A valid complaint preceded the issuance of the arrest warrant. Defendant Caye was searched as a result of the issuance of this arrest warrant. The drugs were found pursuant to this search, and the State clearly had jurisdiction to prosecute him for this separate crime. This is so even if for some reason the defendant could have prevailed in a contention that the Justice Court placed him on trial for having been convicted essentially on the same facts as were presented to the Tribal Court.

_Daniel J Shea_
Justice

7