Samuel LOCKETT, Petitioner-Appellee,

v.

Albert MONTEMANGO, Warden, Brooklyn House of Detention, Brooklyn, New York, Respondent-Appellant.

No. 538, Docket 85–2259.

United States Court of Appeals, Second Circuit.

Argued Nov. 25, 1985.

Decided Feb. 14, 1986.

Barbara D. Underwood, Asst. Dist. Atty., Brooklyn, N.Y. (Elizabeth Holtzman, Dist. Atty., Kings County, Peter A. Weinstein, and Debra Winter Petrover, Asst. Dist. Attys., Brooklyn, N.Y., on the brief), for appellant.

Michael W. Warren, Brooklyn, N.Y. (Louis Clayton Jones, Brooklyn, N.Y., on the brief), for appellee.

Before TIMBERS, PIERCE and MINER, Circuit Judges.

TIMBERS, Circuit Judge:

·The warden of the Brooklyn House of Detention (the "State") appeals from a judgment entered in the Eastern District of New York, Mark A. Costantino, *District Judge*, 618 F.Supp. 147, which granted a petition for a writ of habeas corpus, enjoined the State from prosecuting Samuel Lockett ("appellee") for armed robbery, and ordered the State to examine appellee under its civil commitment procedures.

The district court, in an opinion directly contrary to a unanimous opinion of the New York Court of Appeals in the underly-

ing criminal action, held that, since the state trial court previously had accepted appellee's plea of not responsible by reason of mental disease or defect, the double jeopardy clause of the Fifth Amendment to the United States Constitution barred the State from vacating that plea based on fraud and from prosecuting appellee. The State argues that the district court erred in holding that the prior state plea proceeding placed appellee in jeopardy.

We hold that, since appellee never was at risk of conviction in the state plea proceeding, no jeopardy attached and the State may prosecute him on the charges for which he originally was indicted without violating the double jeopardy clause. We reverse.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellee was arrested on January 5, 1981 at the scene of an armed robbery of a retail store. Subsequently, a grand jury in the New York Supreme Court for Kings County indicted him on eighteen counts of armed robbery and related offenses, all stemming from a spree of retail store armed robberies that occurred between December 6, 1980 and appellee's arrest. After indictment, appellee underwent three separate examinations to determine if he was fit to stand trial. The first of these examinations, concluded in January 1982, resulted in a finding that appellee was not fit to stand trial. The court-appointed psychiatrist found that appellee was suffering from post-traumatic stress disorder ("PTSD") as a result of his combat experiences during the Vietnam War—sometimes referred to as "Vietnam War syndrome". This disorder manifested itself in nightmares and "flashbacks" to the horrors of combat.[1] A second examination three months later found appellee still suffering from a "personality disorder" but fit to stand trial. A final examination in September 1982 found appellee fit to stand trial, although appellee still exhibited many symptoms of PTSD.

After being found fit to stand trial, appellee informed the trial court that he wanted to enter a plea of not responsible by reason of mental disease or defect pursuant to New York Criminal Procedure Law § 220.15 (McKinney 1982).

Appellee could have raised his alleged lack of criminal responsibility at trial as a defense. Section 220.15, an insanity defense reform measure enacted in 1980, allows a defendant to raise the issue in the form of a plea prior to trial. If the State consents and the court accepts the plea, all criminal proceedings are terminated and the defendant is remanded for possible civil commitment.[2]

1. Appellee told one psychiatrist, "I fought in the jungles of Vietnam ... you don't know what it is like ... you walk through jungles and swamps where leeches suck your blood ... I am still a soldier there....." Appellee made similar statements to each psychiatrist that examined him.

2. Section 220.15, in effect when appellee entered his plea, provided:
"§ 220.15 Plea; plea of not responsible by reason of mental disease or defect
1. The defendant may, with both the permission of the court and the consent of the people, enter a plea of not responsible by reason of mental disease or defect to the entire indictment. The district attorney must state to the court either orally on the record or in a writing filed with the court that the people consent to the entry of such plea and that the people are satisfied that the defense

of lack of criminal responsibility by reason of mental disease or defect would not be disproven by the people at a trial beyond a reasonable doubt. The district attorney must further state to the court in detail the evidence available to the people with respect to the offense or offenses charged in the indictment, including all psychiatric evidence available or known to the people. If necessary, the court may conduct a hearing before accepting such plea. The district attorney must further state to the court the reasons for recommending such plea. The reasons shall be stated in detail and not in conclusory terms.
2. Counsel for the defendant must state that in his opinion defendant has the capacity to understand the proceedings and to assist in his own defense and that the defendant understands the consequences of a plea of not responsible by reason of mental disease or defect. Counsel for the defendant must fur-

At the State's request, the trial court ordered an examination of appellee by a State-chosen psychiatrist. This doctor also concluded that appellee suffered from PTSD. On April 13, 1983 the trial court conducted a hearing to determine whether to accept appellee's plea. The State, after reporting the finding of its psychiatrist and summarizing its evidence against appellee, consented to the entry of the plea, concluding that it could not disprove appellee's defense of lack of criminal responsibility. The court, after finding that the State could prove all elements of the charged offenses but could not disprove appellee's defense, engaged appellee in the requisite allocution and accepted the plea. The court then remanded appellee to the New York Commission on Mental Health for examinations to determine if civil commitment was warranted.

In preparation for the civil commitment hearing, the State subpoenaed appellee's military records. The State had attempted to subpoena these records prior to the plea proceeding, but the National Personnel Records Center refused to honor the subpoena because it failed to comply with fed-

---

ther state whether in his opinion defendant has any viable defense to the offense or offenses charged in the indictment other than the defense of lack of criminal responsibility by reason of mental disease or defect. Counsel for the defendant must further state in detail the psychiatric evidence available to the defendant with respect to such latter defense.

3. Before accepting a plea of not responsible by reason of mental disease or defect, the court must address the defendant in open court and determine that he understands each of the following:

(a) The nature of the charge to which the plea is offered, and the consequences of such plea;

(b) That he has the right to plead not guilty or to persist in that plea if it has already been entered;

(c) That he has the right to be tried by a jury, the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself;

(d) That if he pleads not responsible by reason of mental disease or defect there will be no trial with respect to the charges contained in the indictment, so that by offering such plea he waives the right to such trial;

(e) That if he pleads not responsible by reason of mental disease or defect the court will ask him questions about the offense or offenses charged in the indictment and that he will thereby waive his right not to be compelled to incriminate himself; and

(f) That the acceptance of a plea of not responsible by reason of mental disease or defect is the equivalent of a verdict of not responsible by reason of mental disease or defect after trial.

4. The court shall not accept a plea of not responsible by reason of mental disease or defect without first determining that there is a factual basis for such plea. The court must address the defendant personally in open court and determine that the plea is voluntary, knowingly made, and not the result of force, threats, or promises. The court must inquire whether the defendant's willingness to plead results from prior discussions between the district attorney and counsel for the defendant. The court must be satisfied that the defendant understands the proceedings against him, has sufficient capacity to assist in his own defense and understands the consequences of a plea of not responsible by reason of mental disease or defect. The court may make such inquiry as it deems necessary or appropriate for the purpose of making the determinations required by this section.

5. Before accepting a plea of not responsible by reason of mental disease or defect, the court must find and state each of the following on the record in detail and not in conclusory terms:

(a) That it is satisfied that each element of the offense or offenses charged in the indictment would be established beyond reasonable doubt at a trial;

(b) That the defense of lack of criminal responsibility by reason of mental disease or defect would not be disproven by the people at a trial beyond a reasonable doubt;

(c) That the defendant has the capacity to understand the proceedings against him and to assist in his own defense;

(d) That such plea by the defendant is knowingly and voluntarily made and that there is a factual basis for the plea;

(e) That the acceptance of such plea is required in the interest of the public in the effective administration of justice.

6. When a plea of not responsible by reason of mental disease or defect is accepted by the court and recorded upon the minutes, the provisions of section 330.20 of this chapter shall govern all subsequent proceedings against the defendant."

N.Y.Crim.Proc.L. § 220.15 (McKinney 1982). The section was amended in 1984 to reflect New York's change of the insanity defense to an affirmative defense that the defendant must prove by a preponderance of the evidence.

eral regulations. The second subpoena was honored and the State received appellee's military records on June 1, 1983. The records disclosed that appellee never served in Vietnam, but spent his entire military career in Texas as an accounting clerk.

In view of this fraud, the State moved in the trial court on June 7, 1983 to vacate appellee's plea. Appellee opposed the motion, arguing, among other things, that the trial court had no authority to vacate his plea and that recommencing prosecution against him would violate the double jeopardy clause. In an opinion dated October 27, 1983,[3] the trial court vacated appellee's plea. The court held that it had inherent power to vacate fraudulently procured pleas. The court also held that jeopardy had not attached at the plea proceeding; so appellee was not in danger of being exposed to double jeopardy.

Appellee sought injunctive relief in the Appellate Division, asking to have his plea reinstated. In a memorandum decision dated June 18, 1984,[4] the Appellate Division held that the trial court had no "satisfactory authorization" to vacate the plea and ordered it reinstated. The Appellate Division never reached the double jeopardy issue.

The State appealed to the New York Court of Appeals. In a unanimous opinion dated June 6, 1985,[5] the Court of Appeals reversed the Appellate Division and reinstated the trial court's judgment which had vacated appellee's plea. The Court of Appeals held that New York courts have in-herent power to vacate pleas obtained by fraud or misrepresentation. The court also held that vacating appellee's plea and prosecuting him would not violate the double jeopardy clause. The court held that no jeopardy had attached at the plea proceeding because appellee never risked conviction at that proceeding. The court quoted *Serfass v. United States*, 420 U.S. 377, 393 (1975), in which the Supreme Court held that "an accused must suffer jeopardy before he can suffer double jeopardy."

■ On June 27, 1985 appellee filed the instant petition for a writ of habeas corpus in the district court. Appellee argued that further criminal proceedings against him on the indicted offenses would violate the double jeopardy clause. He also claimed that by violating its own statutes the State was denying him due process. In an opinion dated August 9, 1985,[6] the district court granted the petition. The court held that any further criminal proceedings against appellee would violate the double jeopardy clause.[7] The court held that, by accepting appellee's plea, the trial court had made findings that acquitted appellee. The court enjoined the State from further prosecuting appellee under the original indictment and ordered the State to examine him for possible civil commitment. On September 24, 1985 the court reaffirmed its holding after reargument. The court granted the State's motion to stay the issuance of the writ pending the outcome of this appeal.

In the balance of this opinion we shall outline the relevant double jeopardy law, followed by an application of the law to the facts of the instant case.

3. The trial court's opinion is reported at 121 Misc.2d 549, 468 N.Y.S.2d 802 (Sup.Ct., Kings County, 1983).

4. The Appellate Division's memorandum decision is reported at 102 A.D.2d 869, 477 N.Y.S.2d 37 (2d Dept.1984).

5. The Court of Appeals' opinion is reported at 65 N.Y.2d 182, 480 N.E.2d 373, 490 N.Y.S.2d 764 (1985).

6. The district court's decision is reported at 618 F.Supp. 147 (E.D.N.Y.1985).

7. The district court did not address appellee's due process claim and appellee has not pressed it on appeal. The district court, however, did comment gratuitously on the New York Court of Appeals' holding on the inherent power of New York courts to vacate fraudulently obtained pleas. We believe that the district court, in so doing, overstepped the bounds of habeas corpus review. Absent some claim of federal law violation, a district court should refrain from volunteering its opinion on matters of state law.

## II.

■ The double jeopardy clause of the Fifth Amendment,[8] made applicable to the states by the Fourteenth Amendment, prohibits both multiple punishments for the same offense and multiple prosecutions for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The instant case concerns only the latter guarantee—the ban against multiple prosecutions for the same offense.

The Supreme Court has stated that the "underlying idea" behind the prohibition against multiple prosecutions for the same offense is that

"the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*Green v. United States*, 355 U.S. 184, 187–88 (1957).

In view of these concerns, judgments of acquittal are "accorded special weight." *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980). "If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair." *Arizona v. Washington*, 434 U.S. 497, 503 (1978). The Court has admonished us, however, to disregard the label placed on a particular resolution or proceeding, and to determine rather whether an acquittal in substance, not just in form, has occurred. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571–72 (1977).

In analyzing the clause's ban on a second prosecution, the Supreme Court has found it necessary initially to determine if jeopardy had attached in the first proceeding. The Court has stated that "the 'constitutional policies underpinning the Fifth Amendment's guarantee' are not implicated before that point in the proceedings at which 'jeopardy attaches.'" *Serfass v. United States, supra*, 420 U.S. at 390–91, quoting *United States v. Jorn*, 400 U.S. 470, 480 (1971). As we indicated above, the New York Court of Appeals in the underlying criminal action, relying on *Serfass*, held that there must be a first jeopardy before there can be a second. 65 N.Y.2d at 187.

Generally, jeopardy is said to attach at trial once the jury has been empanelled or once the court begins to hear evidence at a bench trial. *Serfass, supra*, 420 U.S. at 388. The Supreme Court, however, has cautioned us against the use of mechanical rules in double jeopardy analysis, at least in unusual procedural settings. *Compare Illinois v. Somerville*, 410 U.S. 458, 467 (1973) (no place for "rigid, mechanical" rules in double jeopardy analysis), *with Serfass, supra*, 420 U.S. at 390 (point at which jeopardy attaches in a jury trial is not subject to modification for policy reasons).

■ Regardless of *when* jeopardy attaches in a particular proceeding, a threshold requirement before the double jeopardy clause can be interposed successfully is that the initial proceeding at issue be the *type* in which jeopardy can attach. *See Serfass, supra*, 420 U.S. at 392 ("But the language of cases in which we have held that there can be no appeal from, or further prosecution after, an 'acquittal' cannot be divorced from the procedural context in which the action so characterized was taken."). While it is evident that a trial on the merits will cause jeopardy to attach once the jury has been empanelled or the first witness has been called at a bench trial, it is less clear as to what *pretrial* proceedings are such as to place a defendant in jeopardy.

In *Serfass*, the Supreme Court considered whether jeopardy had attached and whether an appeal was prohibited from a pretrial order dismissing an indictment for draft evasion. The district court had dismissed the indictment after examining the defendant's Selective Service file and an

---

**8.** The double jeopardy clause provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S.Const. amend. V.

affidavit that set forth the evidence to be adduced at trial. The district court held, as a matter of law, that the local draft board had not supplied sufficient reasons for denying the defendant's conscientious objector claim. The defendant argued that the double jeopardy clause prohibited the government's appeal from the dismissal of the indictment. The Supreme Court held that no jeopardy had attached and permitted the government to appeal from the dismissal of the indictment. The Court held that, since the defendant had not been put on trial before the trier of facts and the district judge was "without power to make any determination regarding [the defendant's] guilt or innocence", jeopardy had not attached. *Id.* at 389. More specifically, the Court held that "[w]ithout risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Id.* at 391–92. *See also Green v. United States, supra,* 355 U.S. at 187 ("The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."); *United States v. Barta,* 635 F.2d 999, 1004 (2 Cir.1980) ("jeopardy does not attach until the accused has been forced to risk a determination of guilt.").

With these principles in mind, we turn to their application to the facts of the instant case.

### III.

■ We start our analysis with full recognition that, had appellee managed to continue his fraud at trial and dupe a jury into believing that he suffered from PTSD, the double jeopardy clause would foreclose the State from attacking an acquittal with appellee's newly discovered military records. In *Burks v. United States,* 437 U.S. 1, 11

(1978), the Court held that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." (footnote omitted). *See also Webster v. Duckworth,* 767 F.2d 1206 (7 Cir. 1985) (Timbers, J.) (double jeopardy clause bars retrial when a conviction is reversed for insufficient evidence). The district court here appears to have been led to believe that this line of cases controlled in the instant case.

Appellee, however, never has been tried for the crimes for which he was indicted. Pursuant to § 220.15, the state trial court entered appellee's plea of not responsible by reason of mental disease or defect, with the State's consent, after it had satisfied itself that: (1) there was a factual basis for the plea; (2) the State at trial could establish all elements of the armed robbery charges beyond a reasonable doubt; and (3) the State would not be able to disprove appellee's defense of lack of criminal responsibility.[9] The trial court also conducted an allocution of appellee and satisfied itself that appellee understood the consequences of his plea, including the fact that, by tendering the plea, appellee was waiving his right to a jury trial. In accepting the plea, the trial court terminated the criminal proceedings against appellee.

The district court found this procedure to be the equivalent of an acquittal for double jeopardy purposes. The district court appears to have been persuaded by the trial court's findings as to appellee's criminal responsibility and the statute's labeling of the plea as equivalent to a jury finding of not responsible by reason of mental disease or defect. We disagree.

As *Serfass* teaches, an acquittal means nothing for double jeopardy purposes until

---

9. The trial court also found, pursuant to § 220.15, that appellee had the capacity to understand the proceedings against him; his plea was knowingly and voluntarily made; and acceptance of the plea was required in the interest of the public in the effective administration of justice. The trial judge, Hon. Michael R. Juviler, one of the drafters of § 220.15, followed its dictates precisely.

the procedural context in which it was rendered has been examined. In the instant case, even if we assume that the trial court "acquitted" appellee, appellee never risked conviction at his plea proceeding and therefore never was in jeopardy.

The New York Court of Appeals, in construing § 220.15 in the underlying criminal action, held that the trial court had only two options: "First, the court could accept the plea, thus terminating the criminal proceedings and initiating the civil commitment proceedings. Second, the court could reject [appellee's] plea offer and permit the criminal proceedings to continue in the normal course. *In no event could the court make a binding factual finding of the defendant's guilt.*" [10]   65 N.Y.2d at 187 (emphasis added) (citation omitted). Since jeopardy can attach only at a proceeding where the defendant risks conviction, *Serfass, supra,* no jeopardy attached at appellee's plea proceeding. Although concededly *Serfass* did not involve a case in which the trial court made factual findings when it dismissed the prosecution, *see Rodrigues v. Hawaii,* —— U.S. ——, ——, 105 S.Ct. 580, 582 (1984) (Brennan, J., dissenting from the denial of certiorari), we do not believe that the trial court's nonbinding factual findings made at a proceeding where appellee did not risk conviction give rise to jeopardy. The State therefore is free to prosecute appellee for the crimes for which he was indicted because "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass, supra,* 420 U.S. at 393.

The district court found *Serfass* inapposite because in *Serfass* the defendant had not waived his right to a jury trial, while in the instant case appellee did waive his right to jury trial by pleading. We do not believe that appellee's waiver is a meaningful distinction in the context of this case. The *Serfass* Court found the defendant's reservation of his jury right significant because it was further evidence that the district court, on the pretrial motion, could not determine the defendant's guilt—evidence that the defendant did not risk conviction. In the instant case we know by reading the statute and the New York courts' interpretation of it that the trial court had no power to convict appellee. His waiver of his right to jury trial does not change that fact.[11]

The policies underlying the double jeopardy clause's ban on multiple prosecutions also weigh in favor of allowing the State to prosecute appellee. He has not been at all disadvantaged by the plea proceeding. Nothing said or found at this proceeding can be used against him at trial. On the contrary, appellee's trial preparation likely has benefited from the opportunity the plea proceeding gave him to review all of the State's evidence against him, including the flushing out, at the pretrial stage, of appellee's phony Vietnam War syndrome defense. As for the concern over the added stress the plea proceeding placed on appellee, "[w]hen a criminal prosecution is terminated prior to trial, an accused is often spared much of the expense, delay, strain, and embarrassment which attend a trial." *Serfass, supra,* 420 U.S. at 391. Moreover, since appellee never was at risk of conviction during the plea proceeding or required to present any evidence other than the court appointed psychiatrists' findings, there is little chance that the State's trying appellee for the first time will so burden him as to create an inordinate likelihood of an erroneous verdict.[12]

---

**10.** This interpretation of the state statute by the state's highest court of course is binding on the federal courts, including our Court.

**11.** At oral argument before us, the State conceded that appellee's waiver of his right to jury trial at the plea proceeding would not be binding on him if he were to go to trial.

**12.** Of course, if the State were to seek to vacate a plea after a long lapse of time, the defendant might well be prejudiced in the preparation of his defense. Such a case is not before us. We are confident however that state statutes of limitation or, in an egregious case, due process concepts, would foreclose prosecution after a long lapse of time.

We also are fortified in our view that the instant plea proceeding did not place appellee in jeopardy by similar holdings by the highest courts of at least three states. Aside from the unanimous holding by the New York Court of Appeals that jeopardy does not attach at this type of plea proceeding, the supreme courts of Hawaii[13] and Montana[14] also have held that a pretrial "acquittal" based on insanity does not place the defendant in jeopardy when there was no risk of conviction at the prior proceeding.[15]

### IV.

To summarize: We hold that at a New York pretrial insanity plea proceeding, where a defendant can be found not responsible by reason of mental disease or defect but does not risk conviction, jeopardy does not attach. When state law permits, the State therefore may move to vacate the plea and recommence criminal proceedings against the defendant on the same charges without violating the double jeopardy clause. Under our holding, appellee now will face the risk of conviction for the first time on the charges for which he originally was indicted. We order that the mandate issue forthwith.

Reversed.

---

**13.** *State v. Rodrigues,* —— Haw. ——, 679 P.2d 615, *cert. denied,* —— U.S. ——, 105 S.Ct. 580 (1984).

**14.** *State v. Hagerud,* 174 Mont. 361, 570 P.2d 1131 (1977).

**15.** A Florida appellate court also has reached the same conclusion. *Thompson v. Crawford,* 479 So.2d 169 (Fla.Dist.Ct.App.1985).