UNITED STATES of America, Appellee,

v.

Humberto FONTANEZ,
Defendant–Appellant.

No. 589 Docket 88–1373.

United States Court of Appeals,
Second Circuit.

Argued Jan. 3, 1989.

Decided March 3, 1989.

---

Frederick J. Scullin, Jr., U.S. Atty. for N.D.N.Y., Syracuse, N.Y. (Sara Criscitelli, Atty., Dept. of Justice, Washington, D.C., of counsel), filed a brief for appellee.

Eric M. Alderman, Syracuse, N.Y., for defendant-appellant.

Before KEARSE, CARDAMONE, and WINTER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Humberto Fontanez, a United States citizen who was indicted for various violations of 18 U.S.C. and 21 U.S.C. following his conviction for possession of narcotics in Canada and his transfer to the United States for service of his Canadian sentence in a United States prison pursuant to certain treaty provisions, appeals from a final judgment of the United States District Court for the Northern District of New York, Neal P. McCurn, *Judge*, convicting him, following his conditional plea of guilty, on one count of travel in interstate commerce to carry on an unlawful business involving narcotics, in violation of 18 U.S.C. § 1952(a) (1982). He was sentenced to two years' imprisonment, to be served concurrently with the prison term imposed by the Canadian court. On appeal, Fontanez contends that the United States prosecution violated his rights under the Double Jeopardy Clause of the Constitution and under a prisoner exchange treaty between the United States and Canada, *see* 18 U.S.C. § 4100 *et seq.* (1982 & Supp. IV 1986). Finding no merit in his contentions, we affirm the judgment of conviction.

## I. BACKGROUND

On July 21, 1986, Fontanez was arrested in Ontario, Canada, in possession of hashish and approximately one pound of uncut cocaine. He was charged with three violations of Canadian law: possession of cocaine on July 21, 1986, for the purpose of trafficking in it, in violation of § 4(2) of the Canadian Narcotic Control Act (count one); possession of hashish on July 21, 1986, in violation of § 3(1) of that Act (count two); and conspiracy in Canada, New York, and elsewhere in the United States between

July 1 and July 21, 1986, to import cocaine into Canada, in violation of § 243(1)(d) of the Criminal Code of Canada (count three). In October 1986, Fontanez pleaded guilty to count one and received a sentence of five years' imprisonment. The two remaining counts were withdrawn.

In December 1986, Fontanez applied pursuant to the Treaty on the Execution of Penal Sentences, Mar. 2, 1977, United States–Canada, 30 U.S.T. 6263, T.I.A.S. No. 9552 ("Prisoner Exchange Treaty" or "Treaty"), for a transfer to the United States in order to serve the remainder of his sentence here. His application was approved by both governments in or after June 1987, and he was eventually transferred to the United States.

In the meantime, in March 1987 Fontanez was indicted in the Northern District of New York on eight counts of violations of 18 U.S.C. or 21 U.S.C., including the following: conspiracy in New York and elsewhere between July 3, 1986, and July 21, 1986, to possess cocaine with intent to distribute it, in violation of 21 U.S.C. § 846 (1982) (count one); travel in interstate commerce to carry on an unlawful narcotics business, in violation of 18 U.S.C. § 1952(a) (counts two through six, the "Travel Act" counts); and possession of cocaine in the Northern District of New York on or about July 18, 1986, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1982) (count eight). Following his transfer to the United States and his arraignment in the Northern District, Fontanez moved to dismiss the indictment on the ground that it violated his rights under the Treaty and under the Double Jeopardy Clause.

The government agreed to the dismissal of counts one and eight, and the court denied the motion to dismiss the Travel Act counts. Eventually, Fontanez agreed conditionally to plead guilty to count six, which charged him with having traveled from Florida to New York on July 17, 1986, for the purpose of carrying on an unlawful narcotics enterprise. The plea agreement preserved Fontanez's right to appeal the court's denial of his motion to dismiss count six on the ground that the United States prosecution violated his rights under the Treaty and the Double Jeopardy Clause.

The district court accepted the conditional plea of guilty to count six and dismissed all of the other counts. It sentenced Fontanez to two years' imprisonment, to be served concurrently with his Canadian sentence. Though his maximum jail time was not thereby increased, the practical effect of this sentence apparently was to delay Fontanez's eligibility for parole. This appeal followed.

## II. DISCUSSION

On appeal, Fontanez contends (1) that his United States conviction violated his rights under traditional double jeopardy principles, and (2) that the Treaty accords even broader protection than does the Constitution and that his conviction infringed his rights under the Treaty. We have considered all of Fontanez's arguments and have found them to be without merit.

### A. *The Double Jeopardy Argument*

■ The Double Jeopardy Clause protects against, *inter alia*, multiple punishments for the same offense. The test for whether conduct constitutes one or more offenses was established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in which the Supreme Court stated that

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182; *see United States v. McCall*, 489 F.2d 359, 362 (2d Cir.1973), *cert. denied*, 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974). We see no double jeopardy violation here.

Fontanez pleaded guilty to count one of the Canadian indictment and count six of the United States indictment. His conviction on count six for interstate travel in order to carry on a narcotics business required proof of, *inter alia*, travel between

states of the United States. Such travel was not, however, an element of the Canadian offense of which he had been convicted, *i.e.*, possession of narcotics in Canada. Nor was possession in Canada, or any other activity in Canada, an element that the government would have been required to prove in order to convict Fontanez on the Travel Act count. Consequently, the two counts of which Fontanez was convicted did not constitute a single offense under the *Blockburger* test.

In an effort to meet the *Blockburger* test, Fontanez argues principally that count three of the Canadian charges was virtually identical to count one of the United States indictment. Both charged him with conspiring in Canada, New York, and elsewhere during a period of weeks ending on July 21, 1986, to engage in unlawful narcotics activity. Though the two conspiracy charges were indeed similar, this argument is unavailing, for when a count has been dismissed, jeopardy has not attached unless the defendant was first " 'put to trial.' " *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion)). Since count three of the Canadian indictment was dismissed without a trial having been commenced, Fontanez was not placed in jeopardy on the Canadian charge of conspiracy.

In sum, since Travel Act count six and the Canadian possession count, the only counts on which Fontanez was put in jeopardy, constitute separate offenses, there has been no double jeopardy violation.

### B. *The Prisoner Exchange Treaty*

Fontanez's contention that his conviction was barred by the Prisoner Exchange Treaty, which governs treatment of persons transferred to the United States after conviction in Canada, has no greater merit. Standards and procedures pertinent to the implementation of such treaties are codified in 18 U.S.C. §§ 4100–4115. Section 4111, on which Fontanez relies, provides as follows:

An offender transferred to the United States shall not be detained, prosecuted, tried, or sentenced by the United States, or any State thereof for any offense the prosecution of which would have been barred if the sentence upon which the transfer was based had been by a court of the jurisdiction seeking to prosecute the transferred offender, or if prosecution would have been barred by the laws of the jurisdiction seeking to prosecute the transferred offender if the sentence on which the transfer was based had been issued by a court of the United States or by a court of another State.

18 U.S.C. § 4111. On its face, this section provides only that the foreign conviction bars a prosecution in the receiving jurisdiction where such a prosecution would have been barred if the foreign conviction had instead been a conviction entered in a court of the receiving state or a sister state or in a federal court. We see no basis for reading this language as providing greater protection than that afforded by the Double Jeopardy Clause. *Accord United States v. Patterson*, 812 F.2d 1188, 1191 (9th Cir. 1987), *cert. denied*, — U.S. —, 108 S.Ct. 1093, 99 L.Ed.2d 255 (1988).

The legislative history supports our reading. It states that § 4111 was designed to "provide[ ] the offender transferred to the United States *the same protection against double jeopardy* that he would have had had he been sentenced by a court of the jurisdiction seeking to prosecute him," or "by a Federal court or a court of another state." H.R.Rep. No. 720, 95th Cong., 1st Sess. 38, *reprinted in* 1977 U.S.Code Cong. & Admin.News 3146, 3161 (emphasis added).

As indicated in Part II.A. above, double jeopardy principles did not bar prosecution of Fontanez on the count to which he pleaded guilty. The Treaty and the statutory provisions implementing it afforded him no greater rights.

### CONCLUSION

The judgment of conviction is affirmed.