06-0908-cr
United States v. Dionisio

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: November 15, 2006                                Decided: September 17 , 2007)

Docket No. 06-0908-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

DOMINICK DIONISIO, a.k.a. BLACK DOM,

*Defendant-Appellant*.

_____

Before: CALABRESI, WESLEY, *Circuit Judges*, OBERDORFER, District Judge.[*]

_____

Appeal from denial of Defendant-Appellant's motion to dismiss on double jeopardy grounds.

Affirmed.

> THOMAS J. SEIGEL, Assistant United States
> Attorney, *for* Roslynn R. Mauskopf, United States
> Attorney for the Eastern District of New York
> (David C. James, Assistant United States Attorney,
> *on the brief*), *for Appellee*.
>
> DIARMUID WHITE, White & White, Port
> Washington, N.Y. (Brendan White & James
> Froccaro, *on the brief*), *for Defendant-Appellant*.

---

[*] The Honorable Louis F. Oberdorfer, of the United States District Court for the District of Columbia, sitting by designation.

1

CALABRESI, *Circuit Judge*:

Defendant Dominick Dionisio appeals the district court's denial of his motion to dismiss a racketeering conspiracy charge that he claims is prohibited by the Double Jeopardy Clause. Dionisio contends that the protections of the Double Jeopardy Clause were triggered when, pursuant to a plea agreement, the court previously dismissed with prejudice another racketeering conspiracy charge against him that was allegedly based on the same offense conduct. Guaranteeing that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. amend. V, the Double Jeopardy Clause protects criminal defendants against "a second prosecution for the same offense after acquittal," "a second prosecution for the same offense after conviction," and "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).

The instant appeal implicates the first of these protections. In doing so, it raises a question that is open in this circuit. Under what circumstances, if ever, does a court's dismissal with prejudice of a charge (pursuant to a plea agreement with the government and prior to a trial by a fact-finder), constitute "jeopardy" for purposes of the Fifth Amendment? We affirm the lower court's determination that, based on the record in the case at bar, the pretrial dismissal of Dionisio's 2001 conspiracy indictment with prejudice did not amount to jeopardy. We do not today decide that jeopardy may never attach as a result of a pretrial dismissal with prejudice. Rather, we hold only (1) that in order for a pretrial dismissal to trigger the protections of the Double Jeopardy Clause, there must be an adjudication of elements of the offense charged, in a way that reflected a genuine risk of conviction, and (2) that no such adjudication occurred in the instant case.

# I. Background

The relevant facts are not in dispute. In 2001, in the Eastern District of New York, Dionisio was charged under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), with counts of substantive racketeering, racketeering conspiracy, and other offenses [hereinafter "2001 indictment"]. These involved the Colombo organized crime family of La Cosa Nostra. The charged conduct allegedly took place from 1993 to 2001. The counts of substantive racketeering and racketeering conspiracy asserted several of the same predicate acts, including a conspiracy to distribute marijuana between January 1999 and May 1999.[1] Pursuant to a plea agreement, Dionisio pled guilty to one count of substantive racketeering, and the court sentenced him to 78 months' imprisonment to run concurrently with a prior sentence. Also pursuant to the plea agreement, the government moved to dismiss with prejudice the other counts against Dionisio. Among these was the racketeering conspiracy charge. Dionisio's plea agreement provided that:

   (a) no further criminal charges will be brought against the defendant for the specific crimes charged against the defendant in the above-captioned superseding indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.*;

   (b) At the time of sentence, [the government] will move to dismiss the remaining counts of the referenced superseding indictment and the underlying indictments *with prejudice*.

---

[1] The substantive racketeering charge listed as the predicate acts: loansharking, securities fraud, money laundering, and other drug trafficking.

(emphasis added). The agreement further stated that "[s]hould it be judged by the Office that the defendant has violated any provision of this agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement." *Id.*

In 2004, Dionisio was once again indicted in the Eastern District of New York on the charge of racketeering conspiracy, this time in violation of 18 U.S.C. § 1962(d) [hereinafter "2004 indictment"]. His charged conduct, also in connection with the Colombo crime family, assertedly took place from November 1991 to May 1999. This conspiracy, as identified by the district court, was based on four claimed predicate acts: "(1) a 1991 double attempted murder, (2) a 1991 robbery of a Yeshiva, (3) a conspiracy to rob marijuana from Hispanic narcotics traffickers in or about and between August 1998 and May 1999, and (4) a conspiracy to rob marijuana 'from a white male residing in the vicinity of Battery Park City in Lower Manhattan' in or about and between August 1998 and May 1999." *United States v. Dionisio*, 415 F. Supp. 2d 191, 194 (E.D.N.Y. 2006) (quoting Def.'s Ex. E. ¶¶ 11-19).

On June 3, 2005, defendant moved to dismiss the indictment both as a violation of the Double Jeopardy Clause and as a breach by the government of the 2001 plea agreement. Dionisio contended that the 2004 marijuana conspiracy indictment to rob marijuana traffickers was based on the same conduct as that which formed the predicate of Dionisio's 2001 marijuana conspiracy indictment. Because the earlier conspiracy indictment had been dismissed "with prejudice," defendant argued that he could not be exposed to jeopardy again on a conspiracy charge grounded in the same offense conduct. Dionisio also argued that the 2004 indictment violated the

4

government's plea agreement pledge that "no further criminal charges will be brought against the defendant for the specific crimes charged" in the 2001 indictment.

On February 15, 2006, the district court (Judge Irizarry) denied Dionisio's motion to dismiss. The court rebuffed the double jeopardy challenge; it held that "jeopardy did not attach when the racketeering conspiracy charge was dismissed with prejudice from the 2001 indictment pursuant to defendant's plea agreement." 415 F. Supp. 2d at 199; *see generally id.* at 195-200. Rejecting defendant's contention that the government had breached the plea agreement, the court noted that the agreement dismissed the 2001 counts only "for the specific crimes charged" and, even if the crimes charged in the 2001 and 2004 indictments were the same, the plea agreement expressly stated that it "does not bar the use of . . . conduct [like that alleged in the 2001 indictment] as a predicate act" in future racketeering prosecutions. *Id.* at 194. The court did not consider whether the two indictments were based on the same offense conduct.

On appeal, at this time, Dionisio may only challenge the double jeopardy ground of the court's denial of his motion to dismiss. And it is that which he seeks to have reversed.[2] He contends that jeopardy attached when the court dismissed, with prejudice, his 2001 indictment for racketeering conspiracy, and further that the dismissal "with prejudice" bears the preclusive force of res judicata because, in effect, it operates as an adjudication on the merits and therefore bars subsequent prosecutions. In response, the government argues that jeopardy did not attach in 2001. It contends that the court gave only ministerial approval to the parties' 2001 plea agreement, and that the

---

[2] A defendant usually may only appeal from a court's final decision, which, in a criminal case, is marked by the imposition of a sentence. *Flanagan v. United States*, 465 U.S. 259, 263 (1984). An interlocutory appeal from a district court pretrial order denying a motion to dismiss an indictment on double jeopardy grounds is, however, permitted. *Abney v. United States*, 431 U.S. 651, 658-62 (1977). *See also infra* note 3.

5

resulting dismissal of the racketeering conspiracy charge can neither be the grounds for collateral estoppel nor for the attachment of jeopardy.

## II. DISCUSSION

We review Dionisio's double jeopardy challenge de novo. *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003). It goes without saying that "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393 (1975); *United States v. Von Barta*, 635 F.2d 999, 1004 (2d Cir. 1980), *cert. denied*, 450 U.S. 998 (1981) (quoting *Serfass*, 420 U.S. at 393); *see also United States v. Jorn*, 400 U.S. 470, 480 (1971); *see generally Ex parte Lange*, 85 U.S. (18 Wall.) 163, 168-69 (1873) (establishing that the Double Jeopardy Clause bars a second prosecution only if jeopardy attached in the original proceeding). At the heart of this appeal is whether the 2001 dismissal with prejudice of the charge against Dionisio placed him in sufficient jeopardy to trigger the protections of the Clause.[3]

As the district court correctly noted, "no Second Circuit or Supreme Court authority directly address[es] whether jeopardy attaches when a charge is dismissed with prejudice pursuant to a plea agreement," 415 F. Supp. 2d at 196. The court nevertheless held that pretrial dismissal with prejudice cannot trigger the attachment of jeopardy. While we believe that the court's categorical ruling was

---

[3] Defendant additionally suggests that the 2004 indictment violated the government's plea agreement pledge that "no further criminal charges will be brought against the defendant for the specific crimes charged" in the 2001 indictment. This challenge is not sufficiently intertwined with Dionisio's double jeopardy question to allow us to consider it on interlocutory appeal. *See supra* note 2. Accordingly, we express no view on the matter and expect that any questions concerning defendant's claim will remain before the district court and be subject to appeal once the case is concluded.

based on a misreading of both Supreme Court and our precedents, as well as an over-reading of the decisions of other circuits, we conclude that on the facts of this case its rejection of appellant's double jeopardy claim was appropriate.

Because a defendant's constitutional interest in finality attaches well before a verdict is reached, it is firmly established that the "attachment of jeopardy" occurs not only with a verdict but more generally at the "point in criminal proceedings at which the constitutional purposes and policies [of the clause] are implicated." *Serfass*, 420 U.S. at 388. As a result, the Supreme Court has long recognized that jeopardy attaches in a *jury* trial after the jury has been empaneled and sworn, *see Kepner v. United States*, 195 U.S. 100, 128 (1904), and in a *bench* trial when the judge begins to hear evidence. *Wade v. Hunter*, 336 U.S. 684, 688 (1949); *McCarthy v. Zerbst*, 85 F.2d 640, 642 (10th Cir.), *cert. denied*, 299 U.S. 610 (1936). We have recognized, however, that while jeopardy certainly attaches in a trial on the merits after a jury is sworn or a judge hears evidence, "it is less clear . . . what *pretrial* proceedings are such as to place a defendant in jeopardy." *Lockett v. Montemango*, 784 F.2d 78, 82 (2d Cir. 1986).

In view of this uncertainty, we begin by examining the standard, established by the Supreme Court and applied by numerous courts of appeals, for evaluating when the protections of the Double Jeopardy Clause may be triggered by a pretrial dismissal.[4]

---

[4] We do not, and need not, resolve on the facts before us the question of whether the 2001 and 2004 racketeering conspiracy counts charged the same offense conduct. In *Blockburger v. United States*, the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932). In discussing (and rejecting on other grounds) Dionisio's claim that the government breached the 2001 plea agreement, the district court properly identified the *Blockburger* framework as the way to determine "whether two racketeering conspiracy charges are the 'same offense' for

## A.  **Identifying the Attachment of Jeopardy.**

### (1) The *Serfass* Standard

*Serfass v. United States,* 420 U.S. 377 (1975), provides the primary guidepost for evaluating pretrial attachments of jeopardy.  In *Serfass*, the Supreme Court reviewed the dismissal, before trial, of an indictment that had been based on defendant's failure to report for military service.  Despite Serfass's contention that the pretrial dismissal relied on "evidentiary facts outside of the indictment, which facts would constitute a defense on the merits at trial," *id.* at 390 (citations omitted), the Court held that "formal or technical jeopardy" had not attached, because the court that had dismissed the indictment was "without power to make any determination regarding petitioner's guilt or innocence." *Id.* at 389 (citations omitted).  But the Supreme Court went further, and stated that even if a dismissal were based on evidentiary facts that gave rise to a constructive acquittal, the word "acquittal" bore "no talismanic quality for purposes of the Double Jeopardy Clause." *Id.* at 392. Rather, "an 'acquittal' cannot be divorced from the procedural context in which the action so characterized was taken." *Id.* Because the pretrial proceedings did not actually concern "facts surrounding the

double jeopardy purposes." 415 F. Supp. 2d at 202 (citing *Russotti v. United States*, 717 F.2d 27, 33 (2d Cir. 1983) (holding that the same offense conduct is only evident when "*both* the enterprise and the pattern of activity alleged" in the earlier indictment are the same as those alleged in the later indictment)).  But the court did not then apply the framework to the case at bar because it concluded that jeopardy would not attach to the 2001 indictment anyway.

In many cases involving double jeopardy claims, it is desirable for a district court to decide the *Blockburger* question first, and thereby avoid what may be complex constitutional issues. In this case, however, since there is nothing in the record to suggest that the pretrial dismissal of Dionisio's 2001 indictment "represented a resolution of any of the factual elements of the offense charged," *United States v. Dahlstrum*, 655 F.2d 971, 974 (9th Cir. 1981), we do not address the *Blockburger* challenge by defendant.

commission of the alleged offense," *id.* at 389 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)), the High Court rejected defendant's claim and said: "Without risk of a determination of guilt, jeopardy does not attach . . . .". *Id.* at 391-92.

Subsequently, in applying *Serfass*, the Supreme Court has underscored the need to look beyond the form of the court's pretrial ruling to its substance in order to determine whether the dismissal actually represented a "*resolution, correct or not, of some or all of the factual elements of the offense charged.*" *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977) (emphasis added). In *Martin Linen,* the Court addressed a judgment of acquittal issued by a trial judge after a deadlocked jury had been discharged. Concluding that the Double Jeopardy Clause barred the government's appeal, the Court emphasized the need to evaluate "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged. There can be no question that the judgments of acquittal entered here . . . were 'acquittals' in substance as well as form." *Id.* at 571-72.

The *Serfass-Martin Linen* framework requires that we look beyond formalistic labels of acquittal or conviction and scrutinize the substantive resolution underlying that disposition. But these decisions also confirm that it is not necessary to have an actual acquittal or, for that matter, a conviction, in order to trigger double jeopardy. What is crucial, instead, is whether the defendant faced the risk of a determination of guilt, and this may well include exposure to risk of conviction in a pretrial plea proceeding. Thus, the key issue, even in a pretrial context, is whether the disposition of an individual's indictment entailed findings of facts on the merits such that the defendant was placed in genuine jeopardy by the making of such findings. This standard for jeopardy attachment comports with the Court's later decisions in *Burks v. United States,* 437 U.S. 1 (1978), and in *United*

9

*States v. Scott*, 437 U.S. 82 (1978), which establish that, in identifying whether jeopardy attached, it is necessary to distinguish: (a) between "determinations that relate to a defendant's culpability and those that are merely procedural and do not bear on the defendant's blameworthiness," as well as (b) between "questions of fact and questions of law." *Kruelski v. Conn. Super. Ct. for the Jud. Dist. of Danbury*, 316 F.3d 103, 109 (2d Cir. 2003); *see also Smalis v. Pennsylvania,* 476 U.S. 140 (1986) (holding that a trial judge's grant of a demurrer, based on insufficiency of the evidence to establish factual guilt, constituted a nonappealable acquittal under the Double Jeopardy Clause).

The practical import of these distinctions is evident in any number of pretrial dispositions. For instance, the determination that a defendant was not tried within the relevant speedy trial time is a finding of fact. But it is not a finding of fact that involves jeopardy. By contrast, a plea agreement in which the court was directly involved in a defendant's decision to plead guilty to two counts, in exchange for an agreement to drop with prejudice a third count, all on the basis of findings of certain facts which support that agreement, might perhaps constitute a pretrial fact-finding that implicated jeopardy in its proper sense of risk of exposure. And the same would likely be true if an individual were to plead guilty to an offense before trial, and the government subsequently were to seek to indict that person for a lesser-included offense. It follows that the adjudication of some facts that go to the *merits* of a charge against a defendant is essential to the standard established in *Serfass* and *Martin Linen*, for only if the facts go to the merits of the case can it be said that the defendant was placed in actual jeopardy.

**(2) The Significance of Preclusion**

None of these requirements are diminished by principles of preclusion. In *United States v. Oppenheimer*, 242 U.S. 85 (1916), the Court found the defendant's indictment to be prohibited because an earlier indictment for the same offense had been held to be barred by a statute of limitations. A later ruling in another case rendered invalid the statute-of-limitations reasoning on the basis of which Oppenheimer's first indictment had been dismissed. The government then sought to recharge Oppenheimer with the identical crimes that had originally been deemed precluded. Rejecting this new indictment, Justice Holmes wrote for the Court:

> It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt. It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence, or that such a judgment is any more effective when entered after a verdict than if entered by the government's consent before a jury is empaneled; or that it is conclusive if entered upon the general issue, but if upon a special plea of the statute, permits the defendant to be prosecuted again. We do not suppose that it would be doubted that a judgment upon a demurrer to the merits would be a bar to a second indictment in the same words.
>
> Of course, the quashing of a bad indictment is no bar to a prosecution upon a good one, but a judgment for the defendant upon [a] ground that . . . goes to his liability as [a] matter of substantive law, and one judgment that he is free as matter of substantive law is as good as another. *A plea of the statute of limitations is a plea to the merits*, and however the issue was raised in the former case, after judgment upon it, it could not be reopened in a later prosecution.

*Id.* at 87-88 (internal citations omitted) (emphasis added).[5]

---

[5] Crucial to this decision was Holmes' interpretation of the statute of limitations before the Court as going to the merits of culpability. Not all statutes of limitations in all states do so. See, for example, the discussion of different statutes of limitations in *Kruelski*, 316 F.3d at 111 n.10. *See also infra* note 7.

The *Oppenheimer* Court expressly rejected both the government's contention "that the doctrine of res judicata does not exist for criminal cases except in the modified form of the 5th Amendment" and the government's conclusion "that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy *in the sense of being before a jury* upon the facts of the offense charged." *Id.* at 87 (emphasis added). The Court then said: "[T]he 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice in order, when a man once has been acquitted *on the merits*, to enable the government to prosecute him a second time." *Id.* at 71 (internal citations omitted) (emphasis added).

Since *Oppenheimer*, there has been much debate on whether that case was grounded in the Double Jeopardy Clause or in broader Due Process arguments. *See, e.g.*, *DiGiangiemo v. Regan*, 528 F.2d 1262, 1264 (2d Cir. 1975); *Paradise v. CCI Warden*, 136 F.3d 331, 336-37 (2d Cir. 1998). But in the end, that discussion is neither here nor there for the issue before us. The Supreme Court did state in *Ashe v. Swenson*, 397 U.S. 436, 442 (1970), that res judicata and collateral estoppel are "ingredient[s] of the Fifth Amendment guarantee against double jeopardy." And so they are. But this does not alter the fact that, as the later *Serfass* and *Martin Linen* cases held, there must be jeopardy in order for there to be double jeopardy. And the existence of res judicata or collateral estoppel does not by itself mean there was jeopardy, that is, it does not answer the question whether a decision on the merits which entailed a risk of conviction had been made. On the facts in *Oppenheimer*, Justice Holmes found that such a decision had there occurred. That, however, means only that a court is required to see whether the operative facts in the case it faces lead to the same or another conclusion. In the case before us, that requires us to consider whether the dismissal with prejudice arising out of an agreement between the parties – whatever it may mean civilly – reflected a resolution of facts

12

crucial to the merits of the *criminal* case that had been brought, and did so through a process that involved a risk of conviction for the defendant.

**B. Use of Other Court Decisions by the Court Below**

We conclude that the Supreme Court's decisions in *Serfass*, *Martin Linen*, *Oppenheimer* and *Ashe* direct a court's attention to a pretrial dismissal's *substance* rather than its form. They focus on the core question of whether there has been a fact-based resolution of elements of the offense charged as a result of a process in which the defendant risked conviction. It is that core question that we must address. The district court, instead, held that where a dismissal with prejudice occurs *pretrial*, no such inquiry is necessary, for no jeopardy can attach. We believe that in reaching this conclusion the district court read decisions of our court and of other circuit courts concerning pretrial dismissals and jeopardy too broadly. And we are not prepared to affirm such a categorical holding.

Our court has applied *Serfass* and its progeny to reject numerous double jeopardy claims that were based on pretrial dismissals. In each case, however, the dismissal had clearly not constituted a resolution of the factual elements of the offense charged in a manner that involved a risk of conviction. Either the opinion did not assert that the dismissal was with prejudice, or the factual elements were manifestly not resolved, or conviction was not in any way at stake. Thus, in *Lockett v. Montemango* we found that jeopardy did not attach to a charge to which, with court approval, the defendant pled that he was "not responsible by reason of mental disease or defect." 784 F.2d at 83-84. In looking beyond defendant's formal "acquittal," we relied upon the New York Court of Appeals' holding that, under the state statute authorizing this plea-based acquittal, the court had power only either to permit the statute-based plea or to reject it and allow the criminal proceedings

13

to continue: "In no event could the court make a binding factual finding of the defendant's guilt." *Id.* at 84 (quoting *Lockett v. Juviler*, 480 N.E.2d 378, 382 (N.Y. 1985)) (emphasis removed). Because only the validity of the defendant's claim of mental disease or defect was at stake in the court's evaluation, he "never risked conviction at his plea proceeding and therefore never was in jeopardy." *Id.*

And in *United States v. Fontanez*, 869 F.2d 180, 183 (2d Cir. 1989), we similarly applied *Serfass* in reviewing the double jeopardy challenge of a defendant whose previously dismissed narcotics conspiracy indictment in Canada was alleged to be "virtually identical" to a narcotics conspiracy charged by the United States. Even if the two charges were identical, we held, "when a count has been dismissed, jeopardy has not attached unless the defendant was first 'put to trial.'" *Id.* at 183 (quoting *Serfass,* 420 U.S. at 388). "Since [the narcotics conspiracy] count . . . of the Canadian indictment was dismissed without a trial having been commenced, Fontanez was not placed in jeopardy on the Canadian charge of conspiracy." *Id.* Critically, however, the record in *Fontanez* did not indicate that the earlier dismissal was "with prejudice." And, despite our holding's use of the term "dismissed," *id.*, our statement of facts observed only that the earlier charge in question was simply "withdrawn." *Id.* at 182.[6]

The decisions of other circuits, even those concerning the specific issue of a dismissal with prejudice, similarly stand only for the — correct — principle that jeopardy does not attach in the

---

[6] We have, from time to time, in dicta, cited the Supreme Court's post-*Serfass* jurisprudence in support of the categorical proposition that jeopardy does not attach as a result of an indictment's pretrial dismissal. For instance, *Martin Linen* was cited by our court, in dicta, in support of the statement that "[t]here can be no double jeopardy issue, where, as here, the initial prosecution was decided on a pretrial motion." *Paradise v. CCI Warden*, 136 F.3d at 336. But as *Martin Linen* makes clear, *see supra* II.A(1)*,* that jurisprudence does not support those dicta. Rather, in each case, the court looked past the form of the prior court's pretrial ruling to its substance.

absence of exposure by the defendant to a determination going to "factual guilt or innocence." The D.C. Circuit Court of Appeals' decision in *United States v. Lindsey*, 47 F.3d 440 (D.C. Cir. 1995), *vacated on other grounds sub nom.*, *Robinson v. United States,* 516 U.S. 1023 (1995), provides a prime example.

In *Lindsey*, the court rejected defendant's argument that a District of Columbia local court's pretrial dismissal of a charge "with prejudice" triggered the double jeopardy bar against his prosecution in the federal district court for the same offense. *Id.* at 444. Significantly, the *Lindsey* court did not hold that the pretrial dismissal of a charge with prejudice could not trigger the attachment of jeopardy. It did not even establish a presumption against such attachment. Instead, the court found that, in *Lindsey*, the *particular* dismissal did not involve questions of factual guilt or innocence. This was because in that case, the reason for the grant of a dismissal with prejudice was – as the court of appeals expressly stated – "*merely to yield jurisdiction to the federal district court.*" *Id.* (emphasis added). And, as the *Lindsey* court further said, the dismissing court "certainly had no power to dismiss the separate indictment then pending in the United States District Court." *Id.* "Understood in its proper context, then, [the] dismissal 'with prejudice' merely operated to bar reprosecution *in the District of Columbia [local] courts.*"[7] *Id.* (emphasis added). In other words, the proceedings before the dismissing court in no way put the defendant at risk of conviction and so could not entail jeopardy.

Likewise, in *United States v. Stricklin*, the Fifth Circuit Court of Appeals concluded that, although the government would be barred by the Sixth Amendment from indicting a defendant for

---

[7] There is no indication, of course, that the bar to prosecution in local courts was based on double jeopardy.

a charge that previously had been dismissed with prejudice for lack of a speedy trial, the defendant's claim that the dismissal triggered the attachment of jeopardy failed because the lack of a speedy prosecution had "nothing to do with guilt or innocence or the truth of the allegations in the indictment." 591 F.2d 1112, 1120 (5th Cir. 1979), *cert. denied*, 444 U.S. 963 (1979) (quoting *United States v. Marion*, 404 U.S. 307, 312 (1971)).

In reaching this conclusion, the *Stricklin* Court relied on the Supreme Court's *Marion* decision, *id.*, which established the principle that a dismissal due to the lack of a speedy prosecution was not a judgment on the merits:

> The motion to dismiss rested on grounds that had nothing to do with guilt or innocence or the truth of the allegations in the indictment but was, rather, a plea in the nature of confession and avoidance, that is, where the defendant does not deny that he has committed the acts alleged and that the acts were a crime but instead pleads that he cannot be prosecuted because of some extraneous factor, such as the running of the statute of limitations or the denial of a speedy trial.

*Marion*, 404 U.S. at 312.[7] Thus, *Stricklin*, like *Lindsey*, confirms the principle that a pretrial dismissal, even with prejudice, does not trigger the attachment of jeopardy unless it represents a merits-based resolution of allegations in the indictment in a way that involved risk of conviction.[8]

---

[7] *Marion*'s comment about statutes of limitations might be thought to be in tension with *Oppenheimer*, in which a statute-of-limitations violation was deemed a merits-based pretrial dismissal. *Marion* and *Oppenheimer* are quite reconcilable, however. *Oppenheimer* turned on the Court's construction of the particular federal statute of limitations before the Court. *See supra* note 5. For the same reason, our court found reasonable, despite *Oppenheimer*, the Connecticut Supreme Court's conclusion that a violation of its state statute of limitations did not provide a merits-based pretrial dismissal triggering jeopardy protections. *Kruelski*, 316 F.3d at 111 n.10. This was because Connecticut interpreted *its* statute of limitations very differently from the interpretation apparently given by the Supreme Court to the limitations statute in *Oppenheimer*. As read by the Connecticut courts, a dismissal pursuant to Connecticut's limitation statute said nothing about the defendant's criminal culpability. *Id.* at 110-11.

[8] The district court also cited rulings from a number of other courts that declined to apply a double jeopardy bar following an indictment's pretrial dismissal pursuant to a plea agreement. *See, e.g.*,

Finally, the district court relied specifically on the finding in *United States v. Dahlstrum*, 655 F.2d 971, 974 (9th Cir. 1981), *cert. denied*, 455 U.S. 928 (1982), that an indictment's "dismissal is not equivalent to acquittal even if dismissal is 'with prejudice.'" 415 F. Supp. 2d at 199 (citing *United States v. Vaughan*, 715 F.2d 1373, 1376 (9th Cir. 1983)). But *Dahlstrum*, instead, confirms the importance of looking past a pretrial ruling's label to the underlying record. For in *Dahlstrum* the lower court's dismissal with prejudice was manifestly not a determination of culpability. T he *Dahlstrum* court found that while "the district judge had serious doubts as to whether the government had established its case beyond a reasonable doubt," the judge had expressly stated that the dismissal was "not on the merits" but rather was due to "governmental misconduct." 655 F.2d at 974.

As a result, *Dahlstrum*, no less than *Stricklin*, *Lindsey*, and the other cases cited by the court below, must be not be read as a holding that forecloses the possibility of the attachment of jeopardy to a pretrial dismissal with prejudice. Rather, it must be viewed as a decision that denies the attachment of jeopardy when, "[a]fter reviewing the entire record, [the reviewing court] cannot conclude, with any degree of certainty, that the district judge's disposition actually represented a resolution of any of the factual elements of the offense charged." *Id*. Not surprisingly, then, in *United States v. Cejas*, 817 F.2d 595, 598, 600 (9th Cir. 1987), decided after *Dahlstrum*, the Ninth

---

*United States v. Nyhuis*, 8 F.3d 731, 735 n.2 (11th Cir. 1993) ("We may disregard the § 846 conspiracy charge in the Michigan indictment which was dismissed pursuant to Nyhuis's plea agreement because jeopardy did not attach to that dismissed charge."); *United States v. Soto-Alvarez*, 958 F.2d 473, 482 n.7 (1st Cir. 1992) ("[J]eopardy ordinarily does not attach to counts which are dismissed and on which no finding of guilty is made"). But *Nyhuis*'s sparse analysis of the dismissal in a footnote does not indicate whether the charge was dismissed with prejudice, and *Soto-Alvarez*'s assertions that jeopardy "ordinarily" does not attach based on a pretrial dismissal, also does not indicate whether a dismissal with prejudice was being considered.

17

Circuit expressly held that where a charge's pretrial dismissal *was* on the merits – not due to faulty procedure or technical defects in the indictment – a subsequent prosecution was barred.[9]

## C. The Merits

We therefore conclude that the district court over-read our court's and other circuit court decisions in reaching its holding that a pretrial dismissal with prejudice necessarily entails no jeopardy. And we doubt that such a bright line test would be consistent with the Supreme Court decisions in *Oppenheimer*, *Ashe*, *Serfass*, and *Martin Linen*. Nevertheless, we need not take an ultimate position on that issue. For, in the case before us, even if we apply the more nuanced test that we think the Supreme Court cases have established, we must hold that no jeopardy attached as a result of Dionisio's plea agreement and the subsequent dismissal of some counts with prejudice.

The record discloses only an agreement *between the parties* that following Dionisio's plea of guilty to one count of substantive racketeering, the government would move to dismiss the remaining counts with prejudice. The government, in fact, made such a motion, and the court duly dismissed the other counts. But we do not know the reason or basis for that dismissal. And there is nothing in the record to suggest that the dismissal entailed a resolution of any factual elements that went to the merits of the charges against Dionisio. There is, moreover, certainly no indication that any such resolution (assuming *arguendo* that one had occurred) involved a process that put Dionisio at any risk of conviction. Under the circumstances, the requirements for the attachment of jeopardy

---

[9] Similarly, the Tenth Circuit Court of Appeals has found that jeopardy attached when a conspiracy charge was dismissed with prejudice, *see United States v. Mintz*, 16 F.3d 1101 (10th Cir. 1994). But the lower court in the case at bar persuasively argued that the Tenth Circuit, in reaching this conclusion, mistakenly relied on what it thought was binding precedent, and so its holding was without any reasoned foundation. *See generally* 415 F. Supp 2d at 196-97.

that, we believe, the Supreme Court has established have not been met. Hence, the district court – although it applied a less nuanced, and less satisfactory, test – nonetheless reached the correct result.

### III.  CONCLUSION

For these reasons, we AFFIRM the district court's holding that Dionisio's 2004 indictment was not barred by the Double Jeopardy Clause.